378 So.2d 783 (1979)
THE FLORIDA BAR, Complainant,
v.
Ernest M. BREED, Respondent.
No. 55473.
Supreme Court of Florida.
November 29, 1979.
Rehearing Denied January 30, 1980.
Allen R. Smith, Bar Counsel, Winter Haven, and David G. McGunegle, Branch Staff Counsel, Tallahassee, for complainant.
Monterey Campbell, of Campbell, Dunlap, Coward & Blakeman, Bartow, for respondent.
PER CURIAM.
This disciplinary action is before the Court for our review pursuant to article V, section 15, Florida Constitution, and the Florida Bar Integration Rule, article XI, rule 11.09. This cause concerns the misuse of clients' funds by the attorney-respondent, and a resulting recommendation of disbarment by the referee. The respondent contends the sanction is too severe in comparison with prior cases where no client suffered any kind of loss.
The relevant facts are as follows. Mr. Breed had for a number of years practiced law in Sebring, Florida, with Joseph MacBeth. Despite the termination of the partnership, their joint escrow account was continued. Both lawyers used the account for the deposit of clients' funds for years with neither being wholly responsible for the funds. Breed also maintained several other accounts which were not used for clients' funds. In 1973 Breed undertook the organization and representation of Coral Manor *784 Convalescent Home, Inc. Although he was not an original investor, he eventually invested nearly $300,000 in the corporation and assumed complete control. The Coral Manor enterprise maintained three accounts at the Florida Coast Bank of Lighthouse Point. Breed initiated a check-kiting scheme in 1975. A Breed check made out to Coral Manor would be deposited at the Florida Coast Bank. A Coral Manor check made out to Breed for the same amount was then deposited in the Breed nonclient accounts in Sebring. The Florida Coast Bank discovered the kite and returned substantial amounts of checks drawn on it for insufficient funds. Breed deposited $70,000 in the Sebring bank to attempt to cover the checks, but, even with that infusion of funds, the account was overdrawn by $6,785.72 on March 30 and $5,785.27 on March 31. Had he not tried to cover the kite, the total amount of nonexistent money moving in the kite would have been over $70,000. One of the sources of funds used to cover the kite was the MacBeth and Breed escrow account although no client suffered any loss from its use.
The Florida Bar audited the escrow account, and the audit reflected that had checks been written to all the clients for the amount due them, the account would have been overdrawn by $15,675.75 on December 31, 1975, and $40,406.36 on March 31, 1976. This calculation did not take into account any part of the funds to which Breed was entitled. The referee concluded that exclusive of amounts owed to Breed, the account was short approximately $7,816.00 and, therefore, Breed had converted clients' funds to his personal use. The evidence clearly reflects that the records kept by Breed were inadequate and clients' funds were not segregated.
The referee concluded that by his actions Breed had willfully disregarded his fiduciary responsibilities and that his acts evinced moral turpitude. Breed is, in the referee's words, "dangerous to that segment of the public with which he comes into professional contact... ." The referee specifically found that Breed had engaged in a check-kiting scheme, that he failed to keep adequate records or to reconcile the escrow accounts, that he commingled his funds with those of his clients, and that he misused and misappropriated his clients' funds. In recommending disbarment, the referee expressed the following:
If one looks strictly at the conduct of a lawyer's practice, the misuse of clients' funds, whether it be using commingled funds or otherwise, is certainly one of the most serious offenses a lawyer can commit. Few offenses have such an adverse public impact. While many disciplinary infractions involve situations where matters in mitigation should be considered, a violation involving the misuse of clients' funds is not one of them. Recognizing restitution (or "nobody lost anything") as a defense or in mitigation may help minimize client losses, but it should not mitigate the discipline. The referee is aware that other referees have found that a "lack of intent to deprive the client of his money" and "personal hardship" justified relatively minor punishment. Such excuses stand out like an invitation to the lawyer who is in financial difficulty for one reason or another. All too often he is willing to risk a slap on the wrist, and even a little ignominy, hoping he won't get caught, but knowing that if he is he can plead restitution, but duly contrite, and escape the ultimate punishment. The profession and the public suffer as a consequence. The willful misappropriation of client funds should be the Bar's equivalent of a capital offense. The should be no excuses.
Breed argues that disbarment is an unnecessarily harsh penalty for the cited misconduct, particularly when it is compared with past attorney discipline opinions of this Court. He asserts that no one suffered any loss and disbarment should not occur under these circumstances.
Breed is correct in his assertion that disciplinary proceedings involving similar misconduct have not resulted in disbarment in the past. See, e.g., The Florida Bar v. Allen, 355 So.2d 778 (Fla. 1978); The *785 Florida Bar v. Blalock, 325 So.2d 401 (Fla. 1976); The Florida Bar v. DuBois, 322 So.2d 498 (Fla. 1975); The Florida Bar v. Weaver, 279 So.2d 298 (Fla. 1973); The Florida Bar v. Pahules, 233 So.2d 130 (Fla. 1970). We recognize that each case must be assessed individually and in determining the punishment we should consider the punishment imposed on other attorneys for similar misconduct. To totally ignore these prior actions would allow caprice to substitute for reasoned consideration of the proper discipline. However, we agree with the referee that misuse of clients' funds is one of the most serious offenses a lawyer can commit. We find that in this instance a two-year suspension with proper proof of rehabilitation before readmission is the appropriate penalty. We give notice, however, to the legal profession of this state that henceforth we will not be reluctant to disbar an attorney for this type of offense even though no client is injured.
Accordingly, Ernest M. Breed is hereby suspended from the practice of law for two years and may then be readmitted only upon proper proof of his rehabilitation. Costs in the amount of $4,274.49 are hereby taxed against the respondent.
It is so ordered.
ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
ENGLAND, C.J., and SUNDBERG, J., dissent with an opinion.
ENGLAND, Chief Justice and SUNDBERG, Justice, dissenting.
In this case the referee found that Breed has willfully disregarded his fiduciary responsibility and that his act evinced moral turpitude. Under these circumstances, we believe that the appropriate penalty is disbarment.