382 So.2d 1220 (1980)
THE FLORIDA BAR, Complainant,
v.
Richard E. WELTY, Respondent.
No. 56769.
Supreme Court of Florida.
April 17, 1980.
*1221 John A. Weiss, Branch Staff Counsel, Tallahassee, for complainant.
Henry L. Gray, Jr. of Chandler, O'Neal, Gray, Lang & Haswell, Gainesville, for respondent.
PER CURIAM.
This is a disciplinary proceeding under article XI of the Integration Rule of the Florida Bar wherein Richard E. Welty was accused of using funds in his client account for his personal benefit. We have for review a report of the referee recommending that respondent Welty be found guilty of the violation of certain disciplinary rules and further recommending that he be suspended for a period of six months and thereafter until he shall prove his rehabilitation. The referee also recommended that he should thereafter be placed on probation for a period of two years.
The report of the referee contains the following findings of fact:
AS TO COUNT I
The Complaint of The Florida Bar has charged in Count I that the Respondent began a course of conduct in January of 1976 by which he disbursed money entrusted for specific purposes to himself as an attorney for purposes other than for which the money had been given to him, that he used trust funds to pay personal and business expenses without the knowledge and consent of his clients, that he became aware that he had created a deficit in his trust account by at least as early as May 1976, that subsequent to May 1976, Respondent continued to use his clients' trust funds for personal expenses and incurred deficits in his trust account as high as $24,848.11, that at all pertinent times he knew or should have known he was disbursing trust funds for purposes for which they had not been entrusted to him and by reason of the above, Respondent violated Rule 11.02(4) of the Integration Rule of The Florida Bar.
AS TO COUNT II
The Complaint of The Florida Bar has charged in Count II that the Respondent closed a real estate transaction in July 1978 receiving $15,000.00 in funds which he held in trust for a client which he failed to promptly disburse because he had used at least a portion of the trust money for personal expenses to make up deficits in his trust account, and by reason of the foregoing Respondent violated Disciplinary Rule 9-102(b)(4) [9-102(B)(4)] of the Code of Professional Responsibility and Rule 11.02(4) of the Integration Rule of The Florida Bar.
1. By his Answer, Respondent admitted the allegations of both counts of the Complaint, but alleging that he had a lack of knowledge of the specifics relating to his trust account until his bookkeeper advised him of the same in the summer of 1978, and alleging that he was without knowledge of the allegation that he was unable to disburse the trust funds obtained at the closing of July 1978 because he had used a portion of the money for personal expenses or to make up deficits in his trust account, and in mitigation, that he was out of his office for oral surgery 6 days in August 1978.
2. In his Answer, Respondent affirmatively admitted the chaotic state of his trust account, and that the same created disbursement difficulties. He affirmatively alleged that he has made all disbursements to his clients as required, has *1222 admitted his improprieties, and has continually and completely cooperated with The Bar. He states that he arranged to obtain a loan from his father for the purpose of balancing his trust account, and his trust account was completely balanced during the month of September, 1978. He alleged that he voluntarily submitted to an audit of the books and records of his trust account by the Grievance Department Auditor of The Florida Bar, and prays that discipline imposed be of such a nature as to permit him to continue the practice of law, and submits that an extended period of probation with periodic audits would be appropriate punishment under the circumstances.
3. The evidence discloses that the Respondent's trust account had shortages as follows:

 March 31, 1977 approximately $19,700.00
 June 30, 1977 " $24,800.00
 September 30, 1977 " $19,500.00
 December 31, 1977 " $18,600.00
 March 31, 1978 " $11,600.00
 June 30, 1978 " $21,400.00

On September 30, 1978, the account had a credit or positive balance of approximately $5,400.00. The evidence further discloses that dispite [sic] the intervention of The Florida Bar in the matter as early as September 1978 (Bar Exhibit # 7), there was again a shortage in the Respondent's trust account of approximately *1223 $1,040.00 on December 31, 1978, and a shortage in the account of approximately $830.00 on January 30, 1979.
While the Respondent cooperated with the Bar in making the audit investigation into this matter, and while he freely admitted the shortages existed, he denied any specific knowledge of the magnitude of the shortages, and seemed to the Referee to lack a grasp of the severity of his shortcomings. He freely admitted taking out a personal loan to cover shortages in 1977, and again in 1978, and asking his wealthy father to advance him money to balance his account.
Few breaches of ethics are as serious as the use of a client's fund for the lawyer's private purposes. The lawyer should guard his clients' funds with much greater diligence and caution than his own. State ex rel. The Florida Bar v. Ruskin, 126 So.2d 142 (Fla. 1961), where the Court, despite Ruskin's restitution, suspended him for six months and thereafter until he proved rehabilitation.
The referee cites The Florida Bar v. Pahules, 233 So.2d 130 (Fla. 1970). In the Pahules case the attorney made full restitution, admitted his misconduct, and evidenced an attitude of repentance and of rehabilitation. Pahules, in practice for nineteen years without discipline, had four minor children to support. The Court suspended him for six months with proof of rehabilitation required before reinstatement.
In State ex rel. The Florida Bar v. Fordham, 143 So.2d 457 (Fla. 1962), the respondent made restitution of funds and there was evidence of prior good character. The Court held that he should be suspended for six months and thereafter until he had proved rehabilitation.
Respondent Welty admits improper handling of his trust account during the period from January 1976 through September 1978, but contends that he did not discover that the state of his trust account was chaotic until November 1977. The full extent of his problem was discovered in June 1978. In mid-1977 he borrowed $45,000.00 at the time he bought his office building and $11,000.00 of that money was applied to cover deficits in his trust account. After his accounts were audited by The Florida Bar, respondent balanced his accounts and began maintaining his balance in accordance with the Integration Rule and the Disciplinary Rule. The referee's findings contain the following:
On September 30, 1978, the account had a credit or positive balance of approximately $5,400.00. The evidence further discloses that dispite [sic] the intervention of The Florida Bar in the matter as early as September 1978 (Bar Exhibit # 7), there was again a shortage in the Respondent's trust account of approximately $1,040.00 on December 31, 1978, and a shortage in the account of approximately $830.00 on January 30, 1979.
This finding was in error, as The Florida Bar and respondent had stipulated that all shortages after September 30, 1978, were due solely to posting errors and delay in transit and were not intended to reflect unfavorably upon respondent Welty's handling of his trust account. The trust account was completely balanced in September of 1978, and at the time of the institution of the grievance procedures all shortages had been corrected by the respondent.
Respondent refers us to The Florida Bar v. Austin, 259 So.2d 142 (Fla. 1972), where an attorney failed to transmit to his client the proceeds of a settlement. The proceeds were not transmitted until disciplinary proceedings had been instituted. The Court approved a public reprimand.
Respondent also cites The Florida Bar v. Pink, 236 So.2d 97 (Fla. 1970), where a public reprimand was given to the attorney for failure to properly account for trust funds and failure to disburse them according to his client's direction. There was no embezzlement or misappropriation in this case.
Respondent also refers us to The Florida Bar v. Reese, 247 So.2d 718 (Fla. 1971). The respondent was found guilty of withholding funds, placing them in an account of his own, and commingling those funds. He personally applied those funds to the payment of a personal obligation, making unauthorized use of the funds for his own personal benefit. He repaid the funds prior to the institution of the proceedings. He received a public reprimand. Thereafter the attorney was before this Court in The Florida Bar v. Reese, 263 So.2d 794 (Fla. 1972). In November of 1969 Reese received $1,200.00 from Henry Hughes, which was to be retained by him in trust as a down payment on a home. Reese did not retain the money in trust, but, to the contrary, put it in his own name and converted it to his own use. Repeated demands were made for the consummation of the real estate closing and for an accounting of the monies. He refused to complete the transaction and refused to account for the money in his possession until April of 1970. In August 1971 he made restitution. This Court concluded that a public reprimand was adequate discipline.
In The Florida Bar v. Novak, 313 So.2d 727 (Fla. 1974), the attorney prepared a will for an elderly woman confined to a nursing home wherein the attorney was named as the sole beneficiary. He also obtained a loan from her of $24,000. The elderly woman changed her mind, another lawyer came in, a bank was appointed guardian of her property, and she changed her will. The attorney readily admitted his errors and made full reimbursement and restitution. This Court approved a public reprimand.
The Florida Bar v. Terry, 333 So.2d 24 (Fla. 1976), involved a situation where an attorney was appointed guardian of his physically incapacitated and aged aunt by a court order. After his appointment he discovered $19,700.00 in a safety deposit box which he alleged that his aunt gave him on a later joint visit to the bank. The existence of the money and the disbursement thereof went undisclosed until a potential heir of the aunt intervened through counsel. No court order was made or sought authorizing the disbursement of the money. The Court found that the ward was mentally incapable of making a gift, ordered the sum returned to the estate and discharged the guardian for failure to discharge his duties and mismanagement of his ward's property. This Court imposed a public reprimand and a continuing probationary period for three years.
Public reprimand should be reserved for such instances as isolated instances of neglect, The Florida Bar v. Larkin, 370 So.2d 371 (Fla. 1979); or technical violations of trust accounting rules without willful intent, The Florida Bar v. Horner, 356 So.2d 292 (Fla. 1978); or lapses of judgment, The Florida Bar v. Welch, 369 So.2d 343 (Fla. 1979). A public reprimand should never be considered sufficient discipline in instances such as this, involving deficits in a trust account extending over two years and *1224 amounting at times to over $24,000.00. The recommendations of the referee are approved and the respondent, Richard E. Welty, is suspended from The Florida Bar for a period of six months, effective May 19, 1980, and thereafter until he shall prove his rehabilitation as provided in Rule 11.10(3), and thereafter he shall be placed on probation for a period of two years. The cost incurred by The Florida Bar in the amount of $781.82 shall be paid by respondent Welty prior to the expiration of his suspension.
It is so ordered.
ADKINS, Acting C.J., and BOYD, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.