526 So.2d 41 (1988)
THE FLORIDA BAR, Complainant/Cross-Respondent,
v.
Keith A. SELDIN, Respondent/Cross-Petitioner.
No. 69956.
Supreme Court of Florida.
May 12, 1988.
Rehearing Denied June 30, 1988.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David M. Barnovitz, Asst. Staff Counsel, Fort Lauderdale, for complainant/cross-respondent.
Barry Richard and William L. Hyde of Roberts, Baggett, LaFace & Richard, Tallahassee, and William Isenberg, Fort Lauderdale, for respondent/cross-petitioner.
PER CURIAM.
This disciplinary proceeding is before us on a complaint of the Florida Bar and the report of the referee, which the Bar contests. We have jurisdiction pursuant to article V, section 15, Florida Constitution, and approve the referee's findings as to guilt but reject the recommended discipline.
The Bar filed a five-count complaint against Keith A. Seldin, a member of the Florida Bar. After a hearing, the referee made the following findings of fact:
As to Count 1
(a) That the Respondent admits to count I of the Bar's allegations that he, while serving in 1983 as counsel for the personal representative for the estate of Stephenson, did pay a finder's fee of $10,000 to his then friend (present wife) Betty Boneparth, a real estate salesperson with broker Fidelity, from the sale proceeds of an estate owned real estate parcel. The sales contract approved and executed by Respondent provided that the seller "recognizes NONE as the broker"... . Respondent further admitted to advising the personal representative so as to avoid any possible broker's commission to a broker, Town & Country, with whom decedent had listed the said parcel for sale to pay the said finder's fee in a lesser amount to Boneparth.
(b) Respondent through his counsel "basically stated"... that Respondent "saw to it a commission or compensation was paid directly to a non-broker. Thus, cutting *42 out either one or two brokers of the commission they were legally entitled to receive and that constitutes a violation of the Florida Criminal Statutes" and which he admits to being "a serious charge"... .
As to Count 2
(c) The Bar alleges in Count 2 that Boneparth played no part in procuring the purchaser for sale of the Stephenson estate property which was known by Respondent when he made the aforementioned $10,000 finder's fee to Boneparth... .
... .
(e) The testimony was clear and convincing that Boneparth played no part in procuring the purchaser or in any way involved [sic] that would justify a real estate commission or finder's fee of $10,000. Boneparth's participation was merely to show to the purchaser the aforementioned real estate parcel at the request of Respondent who was approached by the purchaser for a showing of the property.
As to Count 3
(f) Respondent as a notary public admits his guilt as to Count 3 by taking the acknowledgment of the signature of the personal representative, Kathy Mills, of the Stephenson estate outside her presence, on two conveyance deeds of different dates. Such conduct alleges a violation of F.S. 117.09(1)... .
As to Count 4
(g) The Bar alleges and Respondent admits a violation of Disciplinary Rule 5-105(B) of the Code of Professional Responsibility which provides that a lawyer shall not continue multiple employment where a client will or is likely to be adversely affected.
(h) The conduct herein involved related to Respondent requesting and obtaining from the Stephenson estate personal representative $3621.35 for the purpose of paying an estate indebtedness allegedly owing to Setterfield, a pending matrimonial client of respondent. Setterfield never did receive said money. At the time of said request Setterfield had not filed any claim against the estate and respondent had not fully disclosed to the personal representative the effect of his representation of both Setterfield and the Stephenson estate.
As to Count 5
(i) The thrust of the Bar's complaint is that the Respondent furthered his own financial and/or personal interests by making the aforementioned $10,000 payment to Boneparth at a time when they were married in violation of Disciplinary Rule 5-101(A) of the Code of Professional Responsibility.
(j) Respondent testified with respect to the $10,000 payment "certainly it was given to her but I did get the benefits because we were married"... .
(k) Respondent by way of explanation to Count 5 asserts a factual dispute as to whether Boneparth played a part in procuring the purchaser of the subject real estate. As previously determined in paragraph (e) Boneparth's participation does not justify Respondent's actions.
The referee made the following findings as to the respondent's guilt under the Integration Rule and Code of Professional Responsibility on each of the five counts:
Count 1  Guilty of violating Florida Bar Integration Rule, article XI, rule 11.02(3) (conduct contrary to honesty, justice or good morals); DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation); DR 7-102(A)(7) (counseling or assisting a client in illegal or fraudulent conduct); DR 7-102(A)(8) (engaging in illegal conduct or conduct contrary to a disciplinary rule).
Count 2  Guilty of violating Florida Bar Integration Rule, article XI, rule 11.02(3) (conduct contrary to honesty, justice or good morals); DR 1-102(A)(4) (conduct involving dishonesty, deceit, fraud or misrepresentation).
Count 3  Guilty of violating Florida Bar Integration Rule, article XI, rule 11.02(3) *43 (conduct contrary to honesty, justice or good morals); DR 7-102(A)(8) (engaging in illegal conduct).
Count 4  Guilty of violating DR 5-105(B) (continuing multiple employment when the exercise of the lawyer's independent professional judgment is likely to be adversely affected).
Count 5  Guilty of violating DR 5-101(A) (employment, without client's consent, when the attorney's professional judgment will be affected by his own financial or personal interests).
The referee recommended that Seldin be suspended for one year with proof of rehabilitation and reinstatement conditioned upon Seldin's paying the costs of the disciplinary proceeding, making restitution to the Stephenson estate and attaining a passing score on the ethics portion of the Florida Bar exam. The Bar argues that the appropriate discipline is disbarment. Seldin filed a cross-petition and alleged that the referee erred in finding him guilty on counts 2 and 5 since those allegations were not supported by competent substantial evidence. Seldin argues that, consequently, a one-year suspension is too harsh. We will address Seldin's cross-petition first.

GUILT
As to counts 2 and 5, Seldin argues that the evidence was not clear and convincing that Betty Boneparth did not procure the purchaser for the property owned by the Stephenson estate. Seldin alleges that the testimony of the purchaser, Thomas Lee, was vague and contradictory while Boneparth's and Seldin's testimony was unequivocal that Boneparth did indeed procure the purchaser for the property. From a review of Thomas Lee's testimony, it is clear that he found out that the property was for sale on his own, and then approached Seldin about purchasing it. Seldin then arranged for Betty Boneparth to meet Mr. Lee at the building to let him see the place. Lee testified that Boneparth spent approximately ten to fifteen minutes with him at the building in question. Furthermore, the contract for sale and purchase contained the following clause: "COMMISSION TO BROKER: The seller hereby recognizes NONE as the broker in this transaction...." When asked about why the contract was prepared this way, Mr. Lee responded: "I think my secretary prepared this contract. I had dealt with Mr. Seldin and there was no broker involved and I didn't want anybody claiming a commission against me either." A special referee's findings of fact are presumed correct and will be upheld unless clearly erroneous and lacking in evidentiary support. The Florida Bar v. Neely, 502 So.2d 1237 (Fla. 1987); The Florida Bar v. Marks, 492 So.2d 1327 (Fla. 1986). A review of the record indicates that there was substantial, competent evidence on which the referee could have found that Betty Boneparth did not procure the purchaser of the property. We therefore accept the referee's finding of guilty as to counts 2 and 5.
Seldin does not dispute the findings of guilt with respect to counts 1, 3 and 4. Count 1 arose from the same facts which encompassed counts 2 and 5 but was directed toward Seldin's efforts to exclude either one or both of the brokers from obtaining a real estate commission. In admitting guilt as to count 3, Seldin says that he acknowledged the signature of Kathy Mills outside of her presence on two occasions as a convenience to her because she was not feeling well. He also admits to the conflict of interest as alleged in count 4. He says that one of the principal assets of Stephenson's estate was a liquor lounge and that his divorce client, Setterfield, was owed money for his services in managing the lounge. Acknowledging that he should have recognized the conflict of interest, Seldin asserts that he believed that paying Setterfield was beneficial to the estate because it would keep Setterfield from seeking employment elsewhere. Seldin further points out that even though he recommended the payment to Setterfield, it was never made.

DISCIPLINE
The Bar argues that the appropriate measure of discipline is disbarment. Seldin *44 argues that he should only receive a ninety-day suspension because he has no record of prior or subsequent misconduct and because he presented various letters of commendation from civic leaders in his community. Additionally, Seldin argues that he did not act with venality when he paid the $10,000 to Betty Boneparth; rather, he was trying to save the Stephenson estate money by paying less than what would have been due to the broker who had the listing on the property.
On the issue of disbarment, we are inclined toward the referee's position when he said:
This Referee is mindful of the Bar's recommendation for disbarment; however, I feel in view of the Respondent's absence of any adverse conduct prior to or subsequent to the conduct involving the Stephenson estate, as well as the favorable recommendations from civic leaders in his community and the Respondent's own civic leadership endeavors subsequent to the conduct here complained of, disbarment would be too harsh and punitive. Further considered by this Referee as impressionable was the Respondent's believable sincerity in admitting his wrongdoing, the seriousness of same and his remorseful and cooperative attitude.
On the other hand, the fact remains that Seldin was seeking to exclude at least one real estate broker who had an exclusive listing on the property so that he could pay his soon-to-be wife a $10,000 finder's fee, even though she had not procured the seller. Accepting the referee's findings, the $10,000 belonged either to his client or one or both of the brokers. There can be no question that this misconduct was intentional. Additionally, while all of the misconduct occurred during Seldin's representation of Kathy Mills, the personal representative of the Stephenson estate, the totality of the violations must be weighed when determining the proper discipline.
Accordingly, we hereby accept the referee's findings as to guilt but revise the recommendation as to discipline and instead impose a two-year suspension on Keith A. Seldin. His reinstatement shall be conditioned on proof of rehabilitation, making restitution to the estate of Robert A. Stephenson in the amount of $10,000, attaining a passing score on the ethics portion of the Florida Bar exam and paying the costs of the disciplinary proceeding. The suspension shall take effect thirty days from the date of this order to give Seldin time to wind up his affairs and protect his clients' interests. Seldin shall provide notice to his clients of his suspension in accordance with the provisions of rule 3-5.1(h), Rules Regulating The Florida Bar, and shall accept no new clients from the date of this opinion. Judgment for costs in the amount of $1,510.10 is hereby assessed against Keith A. Seldin, for which sum let execution issue.
It is so ordered.
OVERTON, Acting C.J., and SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion.
EHRLICH, Justice, concurring in part and dissenting in part.
I concur with the Court's opinion except as to discipline.
The referee's findings of misconduct are fully supported by the record. Simply put, Mr. Seldin misappropriated $10,000 from an estate he was representing. This is recognized by the Court's opinion which states:
... the fact remains that Seldin was seeking to exclude at least one real estate broker who had an exclusive listing on the property so that he could pay his soon-to-be wife a $10,000 finder's fee, even though she had not procured the seller. Accepting the referee's findings, the $10,000 belonged either to his client or one or both of the brokers. There can be no question that this misconduct was intentional.
The Florida Bar v. Breed, 378 So.2d 783 (Fla. 1979) involved a check kiting scheme and misuse of trust account funds. The Court upheld a referee's recommended discipline of two years suspension but issued this solemn caveat to the bar:

*45 We give notice, however, to the legal profession of this state that henceforth we will not be reluctant to disbar an attorney for this type of offense even though no client is injured.
Id. at 785. In my view, the misconduct in Breed was not as egregious as in the instant case.
Florida's Standards for Imposing Lawyer Sanctions were approved by the Board of Governors of The Florida Bar in November 1986. These standards are based in part upon similar standards adopted by the American Bar Association in February 1986. The purpose of the standards, it appears to me, is to bring a measure of uniformity to the disciplinary process in this state. Even though the standards have not received the imprimatur of this Court, they should, at the very least, carry an element of persuasiveness. They do represent the considered judgment of the elected governing body of The Florida Bar. Rule 4.11 of the Standards provides for disbarment "when a lawyer intentionally or knowingly converts clients' property regardless of injury or potential injury." Rule 5.11 provides that disbarment is appropriate when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice law." It appears obvious to me that Mr. Seldin's conduct, charged and proved by the bar, is within the purview of these two rules.
Rule 7.1 provides for disbarment "when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public or the legal system." Clearly, Mr. Seldin's misappropriation of the $10,000 constituted a violation of a duty owed as a professional. Equally certain is the fact that such misappropriation was intended to obtain a benefit for himself and for his wife, and it cannot be seriously questioned that such conduct caused serious injury to the client.
I have read the transcript of the proceedings before the referee. Mr. Seldin had several character witnesses who testified as to their dealings with him during the past several years. Their associations and dealings with him were good. The best that they could say was that he exhibited poor judgment in doing the acts charged and proved. Not one witness testified to an extenuating circumstance that might have ameliorated the gravity or enormity of Mr. Seldin's offenses. All theft and dishonest acts can be characterized as poor judgment, but that does not excuse the act, and especially so, when committed by a lawyer against a client. It may well be that Mr. Seldin participated in civic work and was a well liked and trusted member of the community, but the fact remains loud and unmistakably clear that on the occasions charged and proved by the bar, Mr. Seldin departed from the course of conduct observed by his character witnesses and breached the solemn trust he owed to his trusting client, an estate, and gave $10,000 to a lady, now his wife, under the guise of a finder's fee when in fact she had not procured the seller. Mr. Seldin testified with respect to the $10,000 payment "certainly it was given to her but I did get the benefits because we were married."
I have also read the approximately twenty-eight letters written to the referee on Mr. Seldin's behalf. They were not addressing the conduct involved in this case. They spoke about the facet of Mr. Seldin that was upstanding and trustworthy. They were not talking about misconduct. They were not addressing misappropriation of property belonging to a client, deceit of a client by a lawyer. It is indeed nice to have people say kind things about you, but our concern transcends this. Our role is to make certain that the Code of Professional Responsibility (now Rules Regulating The Florida Bar) governing the conduct of lawyers is scrupulously observed and that lawyers who violate the Code by committing acts of moral turpitude are appropriately disciplined, all to the end of protecting the public and restoring the public confidence in the integrity of our profession.
*46 It is sad indeed for a lawyer to transgress as Mr. Seldin did in this case. All of his good deeds fade into relative insignificance when he violated the code by which lawyers, as officers of the Court, are bound, because lawyers are held to a higher standard than other participants in our system of free enterprise. The client places his life, his liberty and his property in the hands of the lawyer. No other member of society is entrusted with so much. The public must have confidence that one to whom so much is entrusted will not breach that confidence. The conduct demanded of lawyers by our Code distinguishes the lawyer from others.
If disbarred, as I believe he should be, all is not lost for Mr. Seldin. He can apply for readmission to the bar in five years if he can establish his rehabilitation and his competence in the field of law, and he can again be readmitted to the bar.
The breach by an attorney of his special position of trust destroys the confidence which the public rightfully reposes in the profession. To impose a two-year suspension, as the Court does, is not adequate to demonstrate to the public that this Court truly meant what it said in Breed. We really ought to live up to what we said we would do in Breed or recede from it.
In conclusion, in my opinion disbarment is the appropriate discipline.