583 So.2d 1379 (1991)
THE FLORIDA BAR, Complainant,
v.
Thomas R. ROGERS, Respondent.
No. 73905.
Supreme Court of Florida.
June 6, 1991.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David G. McGunegle, Bar Counsel, Orlando, for complainant.
Thomas R. Rogers, in pro. per.
John A. Weiss, Tallahassee, for respondent.
PER CURIAM.
This disciplinary proceeding is before the Court on complaint from The Florida Bar *1380 (Bar) and the referee's report. We have jurisdiction. Art. V, § 15, Fla. Const.
The Bar filed a three-count complaint against Thomas R. Rogers, a member of the Bar. Count I alleged that Rogers was guilty of violating the following disciplinary rules of the former Code of Professional Responsibility: DR 1-102(A)(6) for engaging in conduct that reflects adversely on his fitness to practice law; DR 5-101(A) for accepting employment where the exercise of his professional judgment on behalf of clients would be or reasonably may be affected by his own financial, business, property, or personal interests; and DR 5-104(A) for entering into a business transaction with clients when they had differing interests therein.
Count II alleged that Rogers was guilty of violating former Integration Rule, article XI, rule 11.02(4) for failing to utilize client funds for the intended purpose for which they were entrusted to him and the following disciplinary rules of the former Code of Professional Responsibility: DR 1-102(A)(6) for engaging in conduct that reflects adversely on his fitness to practice law; DR 5-101(A) for accepting employment where the exercise of his professional judgment on behalf of clients would be or reasonably may be affected by his own financial, business, or property interests; DR 5-104(A) for entering into a business transaction with clients when they had differing interests therein; and DR 6-101(A)(2) for handling a legal matter without preparation adequate in the circumstances.
Count III alleged that Rogers was guilty of violating former Integration Rule, article XI, rule 11.02(4) for failing and or refusing to furnish an accounting of the funds requested and Disciplinary Rule 1-102(A)(6) of the former Code of Professional Responsibility for engaging in conduct that reflects adversely on his fitness to practice law.
After a hearing the referee made extensive findings of fact. The pertinent findings are as follows.

As to Count I
In 1981, Rogers offered Father John Mitzi his services to the Church as a certified public accountant and as an attorney. Mitzi later consulted Rogers concerning some property he wished to purchase. Rogers created several trusts to avoid public knowledge of Mitzi's investments including the "M-R Trust" on February 18, 1982. Rogers acted as trustee at Mitzi's request and had no monetary interest in the trust.
In 1982, Rogers met Frank Gorman, a friend of Mitzi's, who wanted to invest in real estate. On or about July 13, 1983, Gorman sent a check to Rogers for investment purposes, and later executed a general power of attorney appointing Rogers as his attorney-in-fact.
On October 31, 1983, Gorman and Rogers, acting as trustee for the M-R Trust, formed the G-M Partnership. Rogers had the authority to make all ordinary managerial decisions for which he was compensated twenty percent of the gross rental amount of the investment properties. Rogers' law firm was to provide all legal services. He maintained the partnership books and records until 1986. Rogers' financial interest consisted of one-sixth of the appreciation when an investment property was sold which he received as compensation for locating the property, directing repairs, and interior decorating.
G-M's sole investment was Sun Bay Condominium unit 236B. Rogers received a legal fee for representing M-R at the closing on August 20, 1983. Mitzi was unaware that the down payment was only $10,000.
Rogers charged G-M a monthly management fee without supplying billings. Instead, Rogers took the funds directly from the G-M account by adjusting entries crediting himself with a capital contribution.
Rogers suggested that he, Mitzi, and Gorman form the R-M-G Partnership to invest in a townhouse at Sun Bay and drafted a partnership agreement between G-M and himself on October 31, 1983. The initial capital was $45,000 with G-M contributing $30,000 and Rogers contributing $15,000. Although the agreement stated *1381 that contributions were to be made "in cash or its equivalent," Gorman and Mitzi believed all contributions were made in cash. However, there was no evidence of any cash contributions made to any trust or partnership by Rogers.
Rogers maintained the books and records of R-M-G at his office until the latter part of 1986. He billed R-M-G for his legal services without adivising Mitzi and Gorman of the amount of the entries. The transfers were made directly from the R-M-G account. Rogers was also to receive one-sixth of the appreciation if an investment property was sold at a profit.
R-M-G's sole investment was townhouse unit 8 at Sun Bay Club Condominiums purchased on October 31, 1983. Financing was contingent upon the unit being owner occupied for at least one year, so Rogers lived there as Mitzi or Gorman could not. Mitzi was unaware Rogers intended to live there until he moved in.
Rogers resided in Unit 8 from November 1983 to March 1985, and in Unit 236B from March 1985 through July 1985. During this time he rented his own home and received a tax benefit. The rental amount paid by Rogers for Unit 8 was insufficient to cover the mortgage payments, thus creating a negative cash flow.
Beginning in September of 1984, Rogers requested more money from Gorman to cover the negative cash flow for R-M-G and G-M. Mitzi was not clearly made aware of the monthly operating costs associated with either unit. Gorman told Mitzi that he (Gorman) was assuming the negative cash flow.
Rogers failed to discuss fully his fees for managerial services with either client or advise them of his intention to contribute services in lieu of cash. Rogers claimed a noncash contribution for twenty percent of the gross rentals which he received as his management fee for Unit 8 while he lived in the townhouse. He also claimed noncash contributions for attorney fees. The only service he billed directly to Mitzi and Gorman was income tax preparation. These bills did not indicate his charges for managerial fees to either G-M or R-M-G. As noted above, there was no evidence of any cash contributions made to any trust or partnership by Rogers.
Although Mitzi and Gorman were not unsophisticated investors, Rogers did not discuss fully any potential conflict of interest he may have had with Mitzi or Gorman prior to the execution of the G-M or R-M-G partnerships. Prior to entering into the agreements, he did not advise them of a possible conflict of interest between his role as the attorney for the partnership and his role as an investor. Rogers did not advise them that they should seek the advice of another attorney prior to entering into the G-M and R-M-G partnership agreements.

As to Count II
In August of 1983, Rogers decided to purchase a condominium at The Moorings on Lake Maitland. On September 2, 1983, he signed a condominium purchase and sale agreement for unit 101 Building 2A, The Moorings, as an individual purchaser. The contract was nonassignable; however, Rogers testified that he secured a verbal agreement with the sales director that the contract was assignable. Rogers drew the deposit and an additional deposit from Gorman's funds in Rogers' account. Rogers made these decisions without notifying his clients.
On April 29, 1985, Rogers sent a letter to Gorman requesting that Gorman let him know how to proceed, insinuating that Gorman was not yet an investor in The Moorings condominium. Mitzi and Gorman decided not to invest based partly upon Rogers' recommendation that they not.
Rogers advised Gorman that he would take over responsibility for the expense of the unit and reduce his interest in R-M-G from one-third to one-sixth. Rogers denied that it was intended to cover the $12,650 of Gorman's money used as the deposit. Rogers testified that he could not answer what his percentage interest was at any particular point, and he admitted that he instructed an associate to reduce his interest to one-sixth. In August of 1985, Gorman decided against the investment in The Moorings *1382 after reviewing Rogers' cash flow chart and requested Rogers to return the $12,650 used as a down payment. Rogers refused to return Gorman's equity and failed to return any cash to the R-M-G account. His response to Gorman was "Do you want a bum check?"

As to Count III
When Rogers refused to reimburse Gorman for the funds used as the down payment on The Moorings, Gorman asked Rogers to furnish him with an accounting. Rogers had several conferences with Gorman and Mitzi, furnishing them with a number of charts and summaries. Rogers advised Gorman that a formal accounting would cost $12,000.
The referee made the following findings as to Rogers' guilt under the former Integration Rule and former Code of Professional Responsibility on each of the three counts:
Count I  Guilty of violating DR 1-102(A)(6), DR 5-101(A), and DR 5-104(A);
Count II  Guilty of violating DR 1-102(A)(6), DR 5-101(A), and DR 5-104(A); and
Count III  Guilty of violating former Integration Rule, article XI, rule 11.02(4).
After considering Rogers' lack of any prior disciplinary history, testimony concerning Rogers' character and good reputation in the community, the date Rogers was admitted to the Bar (1977), and Rogers' faith, integrity and devotion to family, the referee recommended that Rogers receive a public reprimand.

GUILT
Rogers challenges the referee's findings of fact as well as the findings of guilt.
A referee's findings of fact are presumed correct and will be upheld unless clearly erroneous and lacking in evidentiary support. The Fla. Bar v. Seldin, 526 So.2d 41 (Fla. 1988); The Fla. Bar v. Neely, 502 So.2d 1237 (Fla. 1987). A review of the record demonstrates that there was substantial and competent evidence to support the findings of fact and of guilt as set forth in this opinion.[1] We therefore approve the referee's findings as set forth herein.

DISCIPLINE
Rogers argues that a public reprimand, as recommended by the referee, is the appropriate remedy should we find that misconduct occurred. He claims that the referee's findings include only technical violations, and that he was not found guilty of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
We agree with the Bar that the referee was too lenient in his recommendation and a suspension is the more appropriate discipline. A public reprimand should be reserved for isolated instances of neglect, lapses of judgment, or technical violations of trust accounting rules without willful intent. The Fla. Bar v. Welty, 382 So.2d 1220, 1223 (Fla. 1980); The Fla. Bar v. Dougherty, 541 So.2d 610 (Fla. 1989).
In The Florida Bar v. Wagner, 497 So.2d 238 (Fla. 1986), we suspended an attorney for eighteen months for lending one client's trust funds to another client which resulted in a loss of $10,000 to the client and for acting as an attorney for a client during a financial transaction between the client and the attorney's own corporation. In contrast to this case, Wagner could not account for the client's money and the only mitigation was that the referee had found no evidence of any illegal activity. If such evidence had been found, disbarment would have been the proper discipline. Id. at 239.
Rogers' misconduct was not an isolated lapse in judgment, but instead, involved misconduct occurring from 1983 to 1986. There was a negative cash flow in a partnership in which Rogers contributed his *1383 legal and management services as his investment. Meanwhile, he derived a great financial benefit by living in the investment properties and renting his own home. He neither risked nor lost anything financially while his partner/client, Gorman, assumed the negative cash flow.
The referee found that Rogers never fully revealed the potential conflict of interest to his clients. He willfully refused to produce an accounting to Mitzi and Gorman when requested as required by former Integration rule, article XI, rule 11.02(4). Although there were no findings of illegal activity, these are not isolated instances of neglect. Although a suspension is warranted, in light of the mitigating factors recognized by the referee, we find a sixtyday suspension to be an adequate discipline.
Accordingly, we adopt the referee's findings of fact as set forth in this opinion and approve the findings of guilt. However, we reject the recommended discipline and suspend Thomas R. Rogers from the practice of law in Florida for a period of sixty days. This suspension shall be effective thirty days from the date of this opinion, thereby giving Rogers time to take the necessary steps to wind up his affairs and protect his clients' interests. Rogers shall provide notice to his clients of his suspension and shall accept no new clients from the date of this opinion. Judgment for costs in the amount of $4,792.90 is entered against Rogers, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The Bar acknowledges that several of the referee's findings as to specific amounts and dates involved which have not been recited in this opinion are either lacking in record support or are otherwise erroneous. However, we agree with the Bar that the erroneous findings which have not been adopted by this Court are de minimis and in no way affect the propriety of the findings of guilt or our conclusion that Rogers' misconduct is serious in nature.