697 So.2d 501 (1997)
THE FLORIDA BAR, Complainant,
v.
Robert HUGHES, Respondent.
No. 86571.
Supreme Court of Florida.
July 17, 1997.
John F. Harkness, Jr., Executive Director; John T. Berry, Staff Counsel and Mary Ellen Bateman/Unlicensed Practice of Law Counsel, Tallahassee; John A. Yanchunis, Chair, Standing Committee on Unlicensed Practice of Law, St. Petersburg; and Loretta C. O'Keeffe/Branch Unlicensed Practice of Law Counsel, Tampa, for Complainant.
Bruce M. Harlan, Clearwater, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding the unlicensed practice of law by respondent Robert Hughes. We have jurisdiction. Art. V, § 15, Fla. Const.

FACTS
On October 6, 1995 the Florida Bar filed a two-count petition against respondent, Robert Hughes, for the unlicensed practice of law, alleging that he violated numerous decisions of this Court, as well as Rule 10-2.1(a), Rules Regulating the Florida Bar (prohibiting individuals other than those licensed to practice law in Florida from assisting others in the selection, preparation and completion *502 of legal forms except for the eliciting of purely factual information necessary to fill in the form). A hearing on these matters was held before a referee on June 7, 1996.
In Count I of its petition, the Bar alleged that respondent improperly held himself out as capable of drafting legal documents, and actually provided legal advice and services to Mr. Ebi Bonfietti that affected his important legal rights; and that Respondent's advice and services required legal knowledge and skill greater than that possessed by the average citizen. The record reflects that respondent is not, and has never been, licensed to practice law in the state of Florida. In 1992, Mr. Bonfietti entered into an agreement with Mr. Ronald Hadley to purchase a house at 1359 Michigan Avenue in Clearwater, Florida. Upon Mr. Hadley's acceptance of Mr. Bonfietti's offer, Mr. Bonfietti drafted an agreement that reflected the price, terms, and conditions of the purchase of this property. Based on Mr. Hadley's recommendation, Mr. Bonfietti brought the handwritten contract for sale to respondent, and at that time explained to respondent that he wanted respondent to prepare a standard contract for sale; and that he wanted the property deeded to his daughter in the event that anything ever happened to him. Respondent assured Bonfietti that he was very experienced in drafting real estate contracts as he had drafted dozens of them, and that he would be able to put it all together for him. When Mr. Bonfietti questioned respondent as to whether he needed to go to a title insurance company or an attorney for this matter, respondent stated that he could handle the whole thing and that lawyers only have a habit of fouling up things like this. Respondent charged Mr. Bonfietti $200.00 to prepare the document.
Mr. Bonfietti never received the standard contract that he requested. Instead, respondent prepared a land trust agreement for Mr. Bonfietti and also appointed himself as beneficiary of the trust agreement, explaining that the land trust was necessary in order to make Mr. Bonfietti's daughter a beneficiary of the property. Respondent also advised Mr. Bonfietti that the land trust could be changed at any time.
When Mr. Bonfietti subsequently had trouble refinancing his property, he brought the land trust agreement to an attorney, Nancy Oset, for her review. Ms. Oset testified at the hearing that Mr. Bonfietti thought he had been given title to the property in his own name, and did not understand why the property had been put into a land trust. Ms. Oset explained the meaning of the land trust to Mr. Bonfietti, and at his request, contacted respondent in an effort to resolve the situation.
In a telephone conversation, respondent informed Ms. Oset that he had prepared the land trust, was extremely knowledgeable in the land trust area and that he had taught other attorneys how to prepare land trusts. Respondent also told her that he was not willing to make a change in the title or in Mr. Bonfietti's situation at that time.
Based on a letter from the original seller of the property at 1359 Michigan Avenue South, Mr. Bonfietti found a bank that was willing to give him a mortgage on the property. However, at the closing, respondent demanded an additional payment of $545.00 from Mr. Bonfietti in order to fight off all of the legal problems that Mr. Bonfietti caused him; otherwise, respondent would not cooperate in the closing.
In Count II, the Bar alleged that respondent also had violated rule 10-2.1(a) by providing legal advice and drafting legal documents that affected the important legal rights of Mr. and Ms. Crine, and required legal knowledge and skill greater than that possessed by the average citizen. As to this count, the record reflects that in 1994, respondent, who still was not licensed to practice law in Florida, prepared an articles of agreement for the purchase and sale of property at 313 Plymouth Street, Safety Harbor, Florida. Mr. Crine, and his wife Teresa Crine, met with respondent and the owner of the property, Ms. Mary Lou Becker, about purchasing Ms. Becker's property. Respondent explained the articles of agreement to Mr. and Mrs. Crine, and based on respondent's advice, Mr. and Mrs. Crine entered into an agreement to purchase the property. Respondent informed Mr. Crine that he was probably the most knowledgeable person in *503 the state of Florida regarding land trusts and that he had taught a course on land trusts. Respondent assisted Mr. and Mrs. Crine by asking them questions and then typing the pertinent information into the agreement that he had prepared. Respondent also informed Mr. Crine that he had drafted the form for the articles of agreement and it was his own form.
Respondent testified at the hearing before the referee that he considers himself to be an expert in land trusts and that he has prepared land trust forms. Respondent also testified that he prepared the assignment of beneficial interest for Mr. Hadley and Mr. Bonfietti, as well as a note, a chattel mortgage, and the collateral assignment of beneficial interest. Respondent further testified that he drafted the articles of agreement form for Mary Lou Becker and the Crines.
After the hearing, the referee found (1) that respondent, while not licensed to practice law in this state, gathered information, counseled persons, and prepared documents for the transfer of interest under land trusts; (2) that these actions affected the important legal rights of persons under the law; and (3) that the reasonable protection of rights and property of those advised and served required that persons giving that advice possess legal skill and knowledge of law greater than that possessed by average citizens. The referee recommended that Hughes be found to have engaged in the unlicensed practice of law and permanently enjoined from counseling, advising, and preparing documents for individuals in the creation and transfer of land and trusts, until such time as he could demonstrate that he was duly licensed to practice law in Florida. He also recommended that the costs of the proceedings be taxed against the respondent.

ANALYSIS
A referee's findings of fact are presumed correct and will be upheld unless clearly erroneous and lacking in evidentiary support. Florida Bar v. Seldin, 526 So.2d 41, 43-44 (Fla.1988); Florida Bar v. McKenzie, 442 So.2d 934 (Fla.1984). The party seeking review in a proceeding concerning the unlicensed practice of law has the burden of showing that the referee's findings are clearly erroneous or unsupported by the record. Florida Bar v. McClure, 575 So.2d 176, 177 (Fla.1991). Unless that burden is met, the referee's findings and recommendations will be upheld on review.
In this case, the referee found each allegation set forth in the Bar's petition to be proven by clear and convincing evidence; and the respondent has not met his burden of showing those findings to be clearly erroneous or unsupported by the record. Consequently, this Court finds that the referee's findings of fact and determinations of guilt are supported by competent, substantial evidence. Florida Bar v. MacMillan, 600 So.2d 457 (Fla.1992).
Additionally, we approve the referee's recommendation of an injunction. Enjoining respondent from counseling, advising and preparing documents for individuals in the creation and transfer of land trusts, or from otherwise engaging in the practice of law in Florida until he is licensed to do so, as well as requiring payment of the costs of the proceedings, are clearly justified and mandated by reason of respondent's prior conduct and in order to protect the citizens of Florida.
Robert Hughes is hereby enjoined from the practice of law and from the activities described above now found by this Court to constitute the unlicensed practice of law, until he is otherwise licensed to do so. Judgment for costs is entered in favor of The Florida Bar and against Robert Hughes in the amount of $3,249.75, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.