519 So.2d 606 (1988)
THE FLORIDA BAR, Complainant,
v.
Gregory S. HARTMAN, Respondent.
Nos. 69243, 70377.
Supreme Court of Florida.
January 28, 1988.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Thomas E. DeBerg, Asst. Staff Counsel and David R. Ristoff, Branch Staff Counsel, Tampa, for complainant.
Gregory S. Hartman, Sarasota, in pro. per.
PER CURIAM.
This disciplinary proceeding is before us on complaint of The Florida Bar and the referee's report. The Bar has filed a petition for review, contesting the referee's recommended discipline as too lenient. We have jurisdiction under article V, section 15 of the Florida Constitution, and approve in part and reject in part the referee's recommendation.
The two complaints stated four counts of misconduct. The referee found that all the acts of misconduct set forth in all counts were admitted and neither party contests those findings.
*607 In case No. 69,243, count one pertained to misconduct while respondent was under contract with the Department of Health and Rehabilitative Services (hereinafter HRS). In July 1984, respondent received $2,500 from John Wyatt as payment for child support. Respondent did not deposit the money in his trust account and did not pay the money to his client, Joanna Wyatt, or notify her that it had been received.
Respondent also provided representation in paternity actions in which putative fathers sometimes advanced the costs for blood tests to be placed in trust pending the outcome of the tests. In seven instances, respondent received such monies but did not place the money into escrow, disburse it to pay for the blood tests, or forward it to HRS.
When respondent's contract with HRS ended in November 1984, records indicated that he had collected $4,131.00 on behalf of HRS clients. However, he forwarded only $550.00 to the new HRS contract attorney. An audit of respondent's trust accounts for the period of March 1, 1979 through April 1, 1985, revealed that he had failed to promptly deliver to clients $9,703.91 which they were entitled to receive.
Count two pertained to respondent's handling of a real estate deal for Norman Lloyd Darby. In September 1983, respondent received $7,000 in proceeds from the sale of Mr. Darby's property which he placed in his trust account but never disbursed to the client.
Count three involved respondent's conduct pursuant to his agreement to handle certain personal debts incurred by a client. In December 1984, respondent was given $3,543.00 in cash by the client to pay off the debts. Respondent failed to satisfy the debts as agreed and kept $491.83 of this money without providing an accounting, allegedly because he was contesting the amount owed him.
As to count one, the referee recommended respondent be found guilty of violating Rule 11.02(4)(b) (failure to maintain required records or to produce them upon proper direction); Disciplinary Rules 9-102(A) (commingling) and (B) (failure to preserve the identity of funds of a client, notify client of receipt of funds, maintain complete records of client's funds, and promptly pay to client funds which the client is entitled to receive); and Bylaws Section 11.02(4)(c) (lack of a separate cash receipts and disbursements journal; failure to produce ledger cards or similar records for all receipts and disbursements of trust funds; lack of required trust account balance reconciliations). On count two, the referee recommended respondent be found guilty of violating Rule 11.02(4)(b); DR 6-101(A)(3) (neglect of a legal matter) and DR 9-102(A) and (B). On count three, the referee recommended respondent be found guilty of violating Rule 11.02(4) (failure to comply with trust fund requirements) and DR 9-102(A) and (B).
Case No. 70,377 pertains to respondent's role in a usurious loan transaction between two of his clients. In August 1984, respondent was asked by a long time friend and client, Carlo Celeste, to assist him in obtaining a loan. Respondent contacted another long time friend and client, Louis Bifano, who agreed to a $10,000 six-month loan at an interest rate of 80 percent. Respondent knew the 80 percent interest rate was usurious. Respondent drafted a note and a mortgage on Mr. Celeste's condominium as security. On May 10, 1985, Mr. Celeste defaulted on the loan and filed bankruptcy, naming Mr. Bifano as a creditor. Respondent did not at any time inform Mr. Celeste or Mr. Bifano that the usurious interest rate rendered the note unenforceable or that it constituted the commission of a third-degree felony. Respondent did not inform Mr. Celeste or Mr. Bifano of the possible conflict of interest which he had in the matter due to his representation of both of them. The referee recommended that respondent be found guilty of violating Rule 1-102(A)(6) (conduct that adversely reflects on fitness to practice law); DR 7-101(A)(3) (prejudice or damage to a client during the course of a professional relationship); and DR 7-102(A)(8) (knowingly engaging in illegal conduct or conduct contrary to a disciplinary rule).
*608 The referee recommended that respondent receive a one-year suspension and a two-year supervised probation period to run concurrently to the suspension, during which respondent must participate in the Florida Lawyer's Assistance, Inc. program. In reaching this recommendation, the referee took into consideration the fact that respondent has been a member of the Bar since 1975, had no prior disciplinary history, and has had no complaints filed in the three years since these acts of misconduct were brought to light. As to mitigation, the referee noted:
Respondent's violations were extensive, however, these violations were without intent but were attributable to emotional instability resulting from marital difficulties, and the concomitant use of drugs and alcohol. Although possibly not forthright initially, he cooperated with the Bar's investigation of the charges and acknowledged his guilt.
The Respondent has suffered the consequences of adverse newspaper publicity and the stigma resulting therefrom. He has faced up to his illness, and pursued rehabilitation, including close monitoring by a fellow attorney. He was instrumental in organizing an AA-type of support group for attorneys in Sarasota and surrounding areas. His rehabilitation has shown steady progress and his prognosis is good.
Respondent has made restitution in one case and [is] taking steps to make restitution in the others.
The suspension is recommended in view of The Florida Bar v. Breed, 378 So.2d 783 (Fla. 1979).
The Bar contends that a one-year suspension is an insufficient penalty and asks that respondent be disbarred. Although misuse of client funds warrants disbarment in some cases, we believe the facts in this case support suspension rather than disbarment.
The purpose of attorney discipline is threefold:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
The Florida Bar v. Pahules, 233 So.2d 130, 132 (Fla. 1970).
In the instant case, the referee found the violations were without intent, occurred during a one and a half year period of emotional instability, and were due in part to drug and alcohol addiction. This Court has in the past recognized loss of control due to drug or alcohol addiction as a mitigating circumstance. The Florida Bar v. Rosen, 495 So.2d 180 (Fla. 1986); The Florida Bar v. Larkin, 420 So.2d 1080 (Fla. 1982). The referee also found respondent "has made steady progress" toward rehabilitation and has maintained his law practice without complaint since the last violation almost three years ago. The "extreme sanction of disbarment is to be imposed only `in those rare cases where rehabilitation is highly improbable.'" Rosen, 495 So.2d at 181-82 (quoting The Florida Bar v. Davis, 361 So.2d 159, 162 (Fla. 1978)). We therefore conclude that disbarment would not serve the purposes of discipline in this case.
While recognizing respondent's progress towards rehabilitation, we are not unmindful of the seriousness of his transgressions and the need to deter others who may be susceptible to such misconduct due to addiction or emotional difficulties. Consequently, we find that the sanction for respondent's misconduct should be a two-year suspension in addition to the probation period recommended by the referee.
Accordingly, Gregory S. Hartman is suspended from the practice of law for two years. The suspension shall begin thirty days from the date this order becomes final to give Mr. Hartman an opportunity to wind up his affairs and protect the interests *609 of his clients. He shall accept no new clients from the date of filing this opinion and shall provide notice to his clients of his suspension in accordance with rule 3-5.1(h), Rules Regulating The Florida Bar.
Costs in the amount of $3,392.15 are hereby taxed against Mr. Hartman for which sum let execution issue.
It is so ordered.
OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion, in which McDONALD, C.J., concurs.
EHRLICH, Justice, concurring in part and dissenting in part.
I concur with the majority's opinion with respect to guilt, but dissent as to discipline.
The facts are set forth in the Court's opinion and, mildly speaking, do no credit to the profession or the practice of law. Even Mr. Hartman says in his brief "It is not disputed that Respondent failed to deposit monies into his trust account and has been unable to account for trust monies. Respondent converted child support money, HLA blood test money and money from a real estate closing."
The referee's report says that Mr. Hartman's violations were extensive, but were "without intent." Intent to do what? We are not told. I do not believe it can be gainsaid that he "had the intent" to divert these funds from their rightful owner to his own use. His acts were unlawful.[*] These funds were not his, they belonged to others, but he nonetheless pocketed them. He certainly exhibited dominion over them and used them for his own purposes. Clients were damaged thereby. This is not a case where accounting procedures went awry, or where record keeping was done poorly. Money which belonged to others was simply taken for his own use, and restitution had not been made as of the time of the referee's report.
The referee attributes these derelictions "to emotional instability resulting from marital difficulties and the comcomitant use of drugs and alcohol." Unfortunately, we were not furnished with a copy of the transcript of the hearing and it is not possible to determine the basis of the referee's conclusion.
The referee's recommended discipline of one year suspension is recognized by the majority as being inadequate considering the gravity of Mr. Hartman's offenses. Likewise, it is my opinion that the two-year suspension imposed by the Court is inadequate. The misconduct merits disbarment, but if the the extenuating circumstances described by the referee do in fact exist, then Mr. Hartman should be suspended for three years. See The Florida Bar v. Rosen, 495 So.2d 180 (Fla. 1986).
McDONALD, C.J., concurs.
NOTES
[*] § 812.014, Fla. Stat. (1985) (theft).

(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.