541 So.2d 602 (1989)
THE FLORIDA BAR, Complainant,
v.
John P. FITZGERALD, Respondent.
No. 71348.
Supreme Court of Florida.
April 6, 1989.
*603 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David M. Barnovitz, Bar Counsel, Ft. Lauderdale, for complainant.
Terence J. Watterson of Watterson & Dickenson, P.A., Palm Beach Gardens, for respondent.
PER CURIAM.
The Florida Bar charged John Fitzgerald in a five-count complaint with various acts of misconduct. This proceeding is before the Court on the petition of The Florida Bar and the cross-petition of John Fitzgerald seeking review of the referee's findings and recommendations. We have jurisdiction[1] and adopt the referee's findings of fact, but impose a sanction of disbarment.
The referee's findings of fact indicate that Fitzgerald and a client, Silvio Giannetti, entered into a partnership to purchase an unimproved parcel of real estate for investment purposes. Each party contributed fifty percent of the purchase price, and the property was acquired on September 5, 1979, in the name of Fitzgerald as trustee.
On or about May 1, 1981, without the knowledge and consent of Giannetti, Fitzgerald received $100,000 from a Lawrence Simon. In exchange, he executed and delivered, in his capacity as trustee, a promissory note in the same amount secured by a purchase money mortgage covering the partnership premises.
On or about July 17, 1981, again without the knowledge and consent of Giannetti, Fitzgerald contracted with Oceanside Development Corporation, through its agent, Fred Harney, for sale of the partnership property for $420,000, which was consummated on or about September 15, 1981.
From the proceeds of the closing, Fitzgerald applied $100,000 to discharge Simon's note; accepted as a portion of Giannetti's share, a $170,000 note and second mortgage on the property subordinated to a $270,000 first purchase money mortgage; and loaned $17,200 of the sale proceeds to third parties who were his employees, securing these loans with third mortgages in favor of the Giannettis. He then appropriated the remaining cash proceeds to his own use and purposes without the knowledge or consent of Giannetti. Based upon these findings of fact, the referee found that Fitzgerald was guilty of the charges alleged in Count I[2] and Count II.[3]
*604 Several months after the closing, it became necessary for the purchaser, Oceanside Development Corporation, to clear the Giannetti mortgage lien from its title in order to obtain construction financing. Harney, on behalf of Oceanside, called Fitzgerald and advised that he was in contact with Giannetti and had planned to substitute a new note in exchange for a satisfaction of mortgage on the subject premises. The referee found
that the Respondent, displaying gross negligence [toward] the best interest of his partner, his trust beneficiary and his client, made it possible for a satisfaction of the $170,000.00 mortgage ... payable to the Giannettis to be purportedly executed by forgeries and to be recorded in the Public Records of Palm Beach County causing his client to lose the face amount of such mortgage plus interest ...; that the Respondent ... prepared such satisfaction of mortgage, signed it as a witness and as a notary when it was unsigned by the Giannettis and left it with a secretary in his office asking her to affix his notarial seal to it after it had been signed by the Giannettis; that the secretary in Respondent's office testified that when such satisfaction was presented to her with purported signatures of the Giannettis on it, she signed it as a witness, and placed Respondent's notarial seal on it after otherwise filling in some blanks in the jurat and that Respondent's office then had such satisfaction recorded; the secretary further testified that she did not see the Giannettis sign the satisfaction; that she did not see the purported signatures of the Giannettis placed on such satisfaction and that she was a notary herself at the time she completed the [acknowledgment] for Respondent on the satisfaction; [and] that Respondent was in Oceanside's office and conferred with Fred B. Harney several times a week or more around the date when such satisfaction was purportedly executed by the Giannettis and that Oceanside before and on such date was feverishly endeavoring to obtain financing on the property it purchased from the partnership... .
Based on these findings of fact, the referee further found Fitzgerald guilty of Count III,[4] which Fitzgerald concedes, and Count IV.[5]
Fitzgerald first argues that the referee erred in finding him guilty of Counts I, II, and IV. We find ample, competent, and substantial evidence to support the referee's findings of fact and thus adopt the determination of guilt on these counts.[6]
*605 We now turn to the appropriate discipline to be imposed in this case. In the absence of any mitigating evidence, these facts would compel immediate disbarment. We must, however, consider the mitigating factors found by the referee. The events which form the basis of this case occurred in 1981-82, prior to the imposition of discipline in The Florida Bar v. Fitzgerald, 491 So.2d 547 (Fla. 1986). Since the initiation of both of these disciplinary matters, Fitzgerald has evidenced signs of rehabilitation. We are not unmindful that a significant period of time has elapsed between the offending conduct here and the imposition of discipline. However, in this case, delay in the imposition of discipline cannot inure to Fitzgerald's benefit as his own actions concealed the conduct which gave rise to the Bar's prosecution. In settling the lawsuit brought by Giannetti to recover his money, the parties agreed that Giannetti would not bring the matter to the Bar's attention. We caution the public and the Bar that any such agreement is not enforceable.
Nevertheless, we cannot ignore Fitzgerald's rehabilitation in the intervening years. Upon unrebutted evidence, the referee found that
throughout the immediate past three years or so, the respondent has changed his life style and the field in which he practices law ... [and] has been a reliable and dependable attorney with the best interests of his clients foremost at all times.
In view of these findings, the referee recommended that Fitzgerald be suspended from the practice of law for three years; that he pay all costs; and that he make full payment of the balance due Giannetti pursuant to a consent judgment entered in the previous civil litigation. If full payment of the costs and balance in the judgment were made within the first year, the referee recommended that the last two years of suspension be revoked.
Both Fitzgerald and The Florida Bar oppose the discipline recommended by the referee. Fitzgerald contends that the recommended discipline is too harsh and would further none of the purposes of attorney discipline. He argues that he has already been rehabilitated, as shown by his changed habits, life-style, and manner of practicing law, and that under these circumstances there is no danger to the public if he continues the practice of law.
The Bar, on the other hand, contends that Fitzgerald's conduct, notwithstanding the evidence of mitigation, warrants enhanced disbarment under various provisions of Florida Standards for Imposing Lawyer Sanctions.[7]
In The Florida Bar v. Hartman, 519 So.2d 606 (Fla. 1988), this Court reiterated the threefold purpose of attorney discipline:
"First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations."
Id. at 608 (quoting The Florida Bar v. Pahules, 233 So.2d 130, 132 (Fla. 1970)).
We accept the referee's findings that Fitzgerald has changed his life-style and practices. We are not satisfied, however, that under the circumstances of this case a suspension is severe enough discipline to "deter others who might be prone or tempted *606 to become involved in like violations." As aptly noted by the referee:
There was a partnership, trust and attorney-client relationship existing between the respondent and Giannetti at all material times in question. If one tried, it would be almost impossible to select three other relationships that require the exercise of a greater degree of trust, diligence and due care than is required between partners, between trustee and beneficiary, and between attorney and client, as was the case here... .
Fitzgerald's misappropriation of trust funds and betrayal of the interests of his client and partner compel disbarment. See The Florida Bar v. Bussey, 529 So.2d 1112 (Fla. 1988); The Florida Bar v. Roman, 526 So.2d 60 (Fla. 1988). In view of the mitigating factors, however, we decline to impose any enhanced disbarment.
Fitzgerald is hereby disbarred from the practice of law without leave to reapply for five years. To allow Fitzgerald to properly close out his practice and protect the interests of his clients, disbarment shall be effective May 8, 1989. Fitzgerald shall accept no new business from the date of this opinion. Judgment for costs is entered against Fitzgerald in the amount of $6,950.29, for which sum let execution issue.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Art. V, § 15, Fla. Const.
[2] Count I charged violation of Florida Bar Integration Rule, article XI, Rule 11.02(3)(a) (act contrary to honesty, justice, or good morals) and Disciplinary Rules 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); 1-102(A)(6) (any other conduct that adversely reflects on one's fitness to practice law); and 7-101(A)(3) (intentionally prejudicing or damaging the client during the course of the professional relationship).
[3] Count II charged violation of Florida Bar Integration Rule, article XI, Rule 11.02(4) (providing that money or other property entrusted to an attorney for a specific purpose is held in trust and must be applied only to that purpose).
[4] Count III charged violations of Florida Bar Integration Rule, article XI, Rules 11.02(3)(a) (act contrary to honesty, justice, or good morals) and 11.02(3)(b) (misconduct which constitutes a felony or misdemeanor) and Disciplinary Rules 7-102(A)(8) (knowingly engaging in other illegal conduct or conduct contrary to a Disciplinary Rule) and 5-105(A) (failing to decline proffered employment if independent professional judgment is likely to be adversely affected).
[5] Count IV charged violation of Florida Bar Integration Rule, article XI, Rules 11.02(3)(a) (act contrary to honesty, justice, or good morals) and 11.02(3)(b) (misconduct which constitutes a felony or misdemeanor) and nine Disciplinary Rules: 1-102(A)(1) (violating a Disciplinary Rule); 1-102(A)(2) (circumventing a Disciplinary Rule through actions of another); 1-102(A)(3) (engaging in illegal conduct involving moral turpitude); 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresenta-tion); 1-102(A)(6) (engaging in any other conduct that adversely reflects on one's fitness to practice law); 7-101(A)(3) (for intentionally prejudicing or damaging the client during the course of the professional relationship); 7-102(A)(3) (concealing or knowingly failing to disclose that which the law requires to be revealed); 7-102(A)(6) (participating in the creation or preservation of evidence knowing that it is obvious that the evidence is false); and 7-102(A)(8) (knowingly engaging in other illegal conduct or conduct contrary to a Disciplinary Rule).
[6] We also adopt the referee's finding of not guilty as to Count V (violating Disciplinary Rules 1-102(A)(6) (engaging in any other conduct that adversely reflects on one's fitness to practice law) and 7-101(A)(3) (intentionally prejudicing or damaging his client during the course of the professional relationship)).
[7] Specifically, the Bar cites to sections 4.11 (disbarment is appropriate when a lawyer knowingly converts client property, regardless of injury), 5.11(f) (disbarment is appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on fitness to practice law), and 7.1 (disbarment is appropriate when a lawyer intentionally violates ethics rule to obtain a benefit and causes potentially serious injury to a client, the public, or the legal system).