557 So.2d 570 (1990)
THE FLORIDA BAR, Complainant,
v.
Frank DIAZ-SILVEIRA, Respondent.
No. 72653.
Supreme Court of Florida.
January 18, 1990.
Rehearing Denied April 2, 1990.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and Kevin Tynan and Randi Klayman Lazarus, Bar Counsel, Miami, for complainant.
Douglas L. Williams of Ferrell, Williams, P.A., Miami, for respondent.
PER CURIAM.
This disciplinary proceeding is before us on complaint of The Florida Bar. The Florida Bar and the respondent, Frank Diaz-Silveira, have petitioned this Court to review the referee's report in which the referee recommended that the respondent be suspended for three years for various violations of the Rules Regulating The Florida Bar. We have jurisdiction. Art. V, § 15, Fla. Const.
In 1985, the respondent was given a public reprimand and placed on probation for misconduct resulting from trust accounting irregularities. The Florida Bar v. Diaz-Silveira, 477 So.2d 562 (Fla. 1985). On June 30, 1988, The Florida Bar filed an eleven-count complaint against the respondent alleging the violations under review in the instant case.[1] The referee recommended that the respondent be found guilty of violating rule 4-8.4(a) of the Rules of Professional Conduct on count I and of violating rule 4-8.4(c) of the Rules of Professional Conduct and rule 5-1.1 of the Rules Regulating Trust Accounts on counts I through X.[2] Neither the Bar nor the respondent questions that recommendation on review and, therefore, we find the respondent guilty on those counts.
Count XI, which contained the most serious allegations of the complaint, read as follows:
57. As a direct result of Counts I through X, The Florida Bar launched a complete audit of the Respondent's Law Office Account and trust accounts.
58. The bank accounts examined were the following:
a) [the general client trust account]
b) [the special trust account]
c) [the law office account]
59. The auditor's examination of Mr. Diaz-Silveira's [general client trust account] revealed that during the period examined ten (10) checks issued from the trust account were dishonored by the bank due to insufficient funds. In addition the trust account was overdrawn a total of twenty (20) times.
60. The auditor's examination of Mr. Diaz-Silveira's [special trust account] revealed that during the period examined fifty (50) checks issued from the trust account were dishonored by the Bank *571 due to insufficient funds. The trust account was overdrawn twenty-three (23) times.
61. The auditor's examination of Mr. Diaz-Silveira's [law office account] revealed that during the period examined two hundred and forty-five (245) checks issued from the account were returned due to insufficient funds. The account was overdrawn one hundred and fifteen (115) times.
62. The Respondent consistently failed to preserve the integrity of entrusted funds, commingling same with personal and operating account monies. Client's funds were deposited in the operating account and used to satisfy what appears to be personal and business obligations. When additional client's funds were received Respondent would use those funds to pay obligations previously incurred.
63. The Respondent on at least two (2) occasions received client's funds, used those funds for unrelated matters, and when he finally paid his clients the check was dishonored due to insufficient funds.
64. During the month of December of 1987, Mr. Diaz-Silveira deposited a total of $30,000.00 of personal funds in the trust account to cover shortages.
65. During 1987, Mr. Diaz-Silveira issued eleven (11) checks from his regular operating account to his trust accounts which were dishonored due to insufficient funds. In every instance Mr. Silveira's regular bank balance was not sufficient to cover the worthless checks and on five (5) occasions the account was overdrawn.
66. The worthless checks which Mr. Diaz-Silveira deposited into his trust account increased his balance for a few days, from the date of the deposit to the date they were dishonored, in an apparent attempt to cover outstanding checks issued from the trust account. This procedure is characterized in the financial circles as Check Kiting.
In his answer the respondent admitted to allegations # 57-61, # 64, and the first sentence of # 65, but denied any violations of the Bar's disciplinary rules. The referee found the facts alleged to be true and recommended that respondent be found guilty of violating rules 4-8.4(a) and (c) of the Rules of Professional Conduct and rule 5-1.1 of the Rules Regulating Trust Accounts. After considering the nature of these violations, the respondent's prior disciplinary matter, evidence of the respondent's good character, and comparable disciplinary cases, the referee recommended that the respondent be suspended for three years.
In his brief to this Court, the respondent argues that there was no substantial and competent evidence that he knowingly and intentionally violated any of the trust accounting rules and, therefore, the finding of guilty on count XI is inappropriate. He also argues that a three-year suspension is disproportionately harsh discipline. In turn, The Florida Bar argues that the appropriate discipline is disbarment.
First, we hold that the referee's findings as to the over 300 bounced checks, commingling of funds, and check kiting are supported by substantial and competent evidence on the record. The referee himself summarized the evidence supporting his finding of the respondent's intent and knowledge as follows:
First, the Bar auditor testified in detail to evidence of "check kiting". It is my perception that the act of issuing insufficient checks from one account to another to create a false balance for a brief period of time at the end of each month, over and over again, cannot be accepted as an unintentional act. Second, Respondent was give a public reprimand and placed on probation in 1985 for similar misconduct. It is hard to fathom why someone who in essence was given "one free bite" could be so utterly unaware.
... Moreover, the Bar brought out testimony during the cross-examination of the Respondent establishing that he was aware for some period of time that checks were bouncing. Notwithstanding this knowledge, Respondent persisted in allowing this practice to continue. Consequently, claims of lack of knowledge or intent cannot be justified.
We also note that the respondent's arguments that the Bar auditor's testimony *572 lacked an adequate basis are without merit. The Bar auditor had access to the respondent's bank records, the respondent's own records, and the respondent's client ledgers, and the auditor worked with both the respondent and the respondent's accountant during the audit. Therefore, we agree with the referee's recommendation of guilt as to count XI.
Next, we turn to the referee's recommendation of a three-year suspension. After reviewing the record and the referee's recommendation, we agree with the Bar that respondent should be disbarred. Although the referee ultimately recommended a suspension, he correctly discussed all the reasons why disbarment is appropriate in this case.
First, the referee noted that the defense that no client money was lost is without merit. See The Florida Bar v. Breed, 378 So.2d 783 (Fla. 1979). The fortuity that no client suffered a financial loss does not mitigate respondent's inexcusable use of client funds. Further, as previously discussed, the referee clearly found that the respondent's actions were intentional. Finally, the referee also considered the testimony of several illustrious members of the community as to the respondent's good character and "charitable and courageous acts" as evidence in mitigation. See The Florida Bar v. Goodrich, 212 So.2d 764 (Fla. 1968). However, the referee again correctly concluded that, although such evidence usually shows an amenability to rehabilitation through corrective measures, corrective measures would be futile here since the respondent's acts were intentional and respondent had previously been disciplined for similar misconduct.
The referee looked to several similar attorney discipline cases for guidance in imposing discipline. In The Florida Bar v. Schiller, 537 So.2d 992 (Fla. 1989), this Court suspended an attorney for three years for violating certain trust accounting rules including the commingling of client funds and utilizing funds for purposes other than those for which entrusted. The referee concluded that, under Schiller, disbarment would be appropriate in the instant case since the respondent also engaged in the deliberate act of check kiting and had previously been disciplined for misconduct of a similar nature. Disbarment was also warranted by The Florida Bar v. Leopold, 399 So.2d 978 (Fla. 1981), where an attorney who had previously been disciplined was disbarred for misappropriation and commingling of client funds. See also The Florida Bar v. Harris, 400 So.2d 1220 (Fla. 1981). The referee also noted that the Florida Standards for Imposing Lawyer Sanctions suggest disbarment as the appropriate discipline under rule 4.11.[3]
Based on the referee's thorough discussion of the appropriate discipline, we believe that the respondent should be disbarred. Therefore, we hereby disbar Frank Diaz-Silveira effective as of the date of his suspension, August 25, 1988. Judgment is entered against Diaz-Silveira for costs in the amount of $4,166.19, for which sum let execution issue.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Respondent was suspended on August 25, 1988 pending further order of this Court.
[2] Rule 4-8.4 reads in pertinent part:

A lawyer shall not:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
... .
(c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation... .
Rule 5-1.1 reads in pertinent part:
Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose.
[3] The Referee also noted that even if he had not found intentional misconduct and, thus, suspension was the recommended discipline under rule 4.12, Standards for Imposing Lawyer Sanctions, he could still recommend disbarment since discipline may be increased where a prior disciplinary offense has been committed. Rule 9.22, Standards for Imposing Lawyer Sanctions.