573 So.2d 807 (1991)
THE FLORIDA BAR, Complainant,
v.
Donald K. McSHIRLEY, Respondent.
No. 74086.
Supreme Court of Florida.
January 10, 1991.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David R. Ristoff, Branch Staff Counsel, Tampa, for complainant.
John A. Weiss, Tallahassee, and Richard T. Earle, Jr. of Earle and Earle, St. Petersburg, for respondent.
PER CURIAM.
This disciplinary proceeding is before us on complaint of The Florida Bar and the referee's report finding Donald K. McShirley guilty of professional misconduct and recommending a three-year suspension. The Florida Bar petitions for review, seeking disbarment. McShirley cross-petitions, seeking a one-year suspension. We have jurisdiction. Art. V, § 15, Fla. Const. We accept and impose the referee's recommended three-year suspension.
The Florida Bar audited McShirley's trust account records after he declared bankruptcy, discovering several irregularities. Some records were missing, allegedly lost while moving between offices. Others showed that disbursements made to, or on behalf of, McShirley exceeded the amount of personal funds commingled in the trust account, creating a deficit balance. From May 1980 to May 1982, the Bar auditor's reconstructed reconciliations reflected deficits of $10,634.63. No records were available for the period from June 1982 through July 1984. By January 1986 the deficits totaled approximately $27,000.00. McShirley admitted converting the funds to make personal real estate transactions, to support a little league baseball program, and to pay his law office operating expenses when necessary. He testified that he knew of the deficits and that, before the Bar initiated its audit, he deposited sufficient funds to replace the money he converted.
The referee found McShirley guilty of violating the following Rules Regulating The Florida Bar: Rule 5-1.1(b) (failure to maintain records or to produce them); rule 5-1.2(b)(3) (cancelled checks required); rule *808 5-1.2(b)(5) (cash receipts and disbursements journal required); rule 5-1.2(b)(6) (ledger cards required); rule 5-1.2(b)(7) (bank statements required); rule 5-1.2(c)(1), (2), and (3) (reconciliations, comparisons, and listings required); rule 5-1.2(c)(4) (evidence of compliance which requires the lawyer to authorize and request the bank to notify The Florida Bar in the event any trust check is returned due to insufficient or uncollected funds, absent bank error); rule 4-1.15 (commingling lawyer's funds with client's trust funds); and former disciplinary rules 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 1-102(A)(6) (engaging in any other conduct that adversely reflects on an attorney's fitness to practice law). The referee found as mitigating factors McShirley's (1) absence of a prior disciplinary record; (2) good character or reputation; (3) remorse; (4) timely good faith effort to make restitution, even prior to the initiation of disciplinary proceedings, along with the fact that no client was damaged or harmed; and (5) his cooperative attitude toward the disciplinary proceedings. The referee also found McShirley's deliberate and intentional misappropriation of a substantial amount of money for personal benefit as an aggravating factor. After making these findings, the referee recommended a three-year suspension, passage of the ethics portion of The Florida Bar examination, and payment of costs of the proceeding.
The knowing and intentional misappropriation of a client's property is a serious offense. "In the hierarchy of offenses for which lawyers may be disciplined, stealing from a client must be among those at the very top of the list." The Florida Bar v. Tunsil, 503 So.2d 1230, 1231 (Fla. 1986). In light of the seriousness of this offense, this Court has previously stated that we will not be reluctant to disbar an attorney for this type of offense, even though no client is injured. The Florida Bar v. Breed, 378 So.2d 783 (Fla. 1979). See, e.g., The Florida Bar v. Shuminer, 567 So.2d 430 (Fla. 1990); The Florida Bar v. Diaz-Silveira, 557 So.2d 570 (Fla. 1990); The Florida Bar v. Mims, 532 So.2d 671 (Fla. 1988); The Florida Bar v. Roman, 526 So.2d 60 (Fla. 1988); The Florida Bar v. Knowles, 500 So.2d 140 (Fla. 1986); The Florida Bar v. Leopold, 399 So.2d 978 (Fla. 1981).
In determining the appropriate discipline to impose in a particular case, we must remain mindful of the purpose of attorney discipline.
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
The Florida Bar v. Pahules, 233 So.2d 130, 132 (Fla. 1970). Accord The Florida Bar v. Fitzgerald, 541 So.2d 602 (Fla. 1989); The Florida Bar v. Hartman, 519 So.2d 606 (Fla. 1988). Under the circumstances of the instant case, we admit that the decision whether to disbar McShirley is a close one. He knowingly converted client funds for his personal use over a period of several years. This was not an isolated instance of misappropriation but instead a repeated "dipping into" the trust account.[*] To disbar *809 McShirley without considering the mitigating factors involved, however, would be tantamount to adopting a rule of automatic disbarment when an attorney misappropriates client funds. Such a rule would ignore the threefold purpose of attorney discipline set forth in Pahules, fail to take into account any mitigating factors, and do little to further an attorney's incentive to make restitution.
In this case, we find of particular importance and significant mitigation that McShirley replaced the converted funds before the Bar initiated any action against him. This, along with McShirley's lack of any prior disciplinary actions, genuine remorse, cooperative attitude towards the disciplinary proceedings, and the absence of client harm, makes disbarment inappropriate and unduly harsh. On the other hand, anything less than a three-year suspension may not sufficiently deter other attorneys who might be tempted to avail themselves of their clients' readily accessible funds. Regardless of the mitigating circumstances involved, the intentional misappropriation of client property remains a most serious offense.
Accordingly, after carefully reviewing the record, we approve the referee's findings and recommendation. We therefore suspend Donald K. McShirley from the practice of law for a period of three years. During that period he is hereby enjoined and prohibited from the practice of law in this state. In order to close out his practice in an orderly fashion and to protect his clients' interests, this suspension will begin thirty days from the date this opinion is filed. McShirley shall accept no new business after the filing date. We also approve the referee's additional recommendations that McShirley pay costs and take and pass the ethics portion of The Florida Bar examination. Judgment for costs in the amount of $6,407.60 is hereby entered against McShirley, for which sum let execution issue.
It is so ordered.
OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
EHRLICH, Senior Justice, dissents with an opinion, in which SHAW, C.J. and KOGAN, J., concur.
EHRLICH, Senior Justice, dissenting.
I cannot agree with the majority's conclusion that disbarment, in light of the mitigating circumstances, is inappropriate. The conduct at issue in the present case is, in my view, extremely egregious. The Bar's audit revealed that there were shortages in the trust account as early as 1980. The respondent admitted that he intentionally misappropriated trust account funds repeatedly over a period of time that extended from 1983 through approximately February of 1986. During this period of time, the respondent submitted certified statements to The Florida Bar indicating that his trust account records were in substantial compliance with the Rules Regulating The Florida Bar although he knew that there were significant deficits in his trust accounts.
Respondent testified that he spent approximately $35,000 of his own funds and $5,000 to $6,000 from his trust account on a little league baseball program, and approximately $20,000 from his trust account was expended for personal or office business expenses.
While it is most laudable for a lawyer to contribute his time and effort and his own resources to a worthwhile civic enterprise, especially for youth, it is hardly appropriate to use trust funds for that purpose.
The majority finds of particular importance the fact that the respondent replaced the converted funds before the Bar began an investigation of his trust account. The respondent testified that in late February of 1986 he obtained a loan from a savings and loan association to cover the shortages. The total proceeds of the loan was $65,000. Of this amount, $42,000 was placed in the trust account to replace amounts withdrawn. *810 The significance of this event, in my opinion, is that the respondent obviously had substantial borrowing power during the time in question. Instead of borrowing in order to meet his needs, both business, personal and eleemosynary, respondent simply took the money from his clients. As respondent testified, "at the end of a month, if I didn't have enough to pay the bills and I knew it was there, then I would go write a check from trust to my general account and pay the bills. Sometimes I would just pay a bill directly from the trust account."
Respondent's statements and actions reveal a cavalier attitude toward clients' funds. This attitude is antithetical to his responsibilities and fidelity to a client. Indeed, the lawyer is the shepherd of funds entrusted to him by a client and it is essential that the public view the lawyer in this light, and when the Bar no longer merits this trust, then the public can rightfully insist that the privileges that the members of the Bar currently have, be surrendered or curtailed. This should never be permitted to happen, and we can best keep this from coming to pass by removing from the ranks of the Bar those who are so lacking in character or so deficient in judgment as to misappropriate a client's money. As I have previously stated, "[t]he client places his life, his liberty and his property in the hands of the lawyer. No other member of society is entrusted with so much. The public must have confidence that one to whom so much is entrusted will not breach that confidence." The Fla. Bar v. Seldin, 526 So.2d 41, 46 (Fla. 1988) (Ehrlich, J., dissenting). The conduct at issue poses a great potential for injury to clients; the fact that there was no client injury in the present case is merely fortuitous.
The majority gives great weight to the mitigating circumstances found by the referee. I certainly do not disparage or belittle those findings. However, I am of the view that those particular mitigating circumstances are more appropriately to be utilized if and when respondent petitions to be readmitted to the Bar. I agree with the Bar that disbarment is the appropriate discipline.
Accordingly, I respectfully dissent.
SHAW, C.J., and KOGAN, J., concur.
NOTES
[*] Indeed, in The Florida Bar v. Shuminer, 567 So.2d 430 (Fla. 1990), we recently disbarred an attorney for repeatedly converting client funds with similar mitigating circumstances. There, however, the attorney's conduct was more egregious. By settling cases without client consent or knowledge, Shuminer committed fraud on his clients in addition to misappropriating funds for his personal use. Such conduct certainly deserves disbarment. See also The Florida Bar v. Kramer, 548 So.2d 233 (Fla. 1989) (conversion of client property and then concealing that fact with false affidavits warrants disbarment). We do not imply that the continued misappropriation of client funds, standing alone, may not warrant disbarment. Without significant mitigating factors, disbarment certainly may be the appropriate discipline. See The Florida Bar v. Knowles, 500 So.2d 140 (Fla. 1986) (disbarment is proper when attorney intentionally converted client property to personal use over a period of four years; alcohol abuse problem was not sufficient mitigation to lessen this discipline to a suspension).