829 So.2d 883 (2002)
THE FLORIDA BAR, Complainant,
v.
Alan Ira KARTEN, Respondent.
No. SC00-256.
Supreme Court of Florida.
October 10, 2002.
Rehearing Denied December 12, 2002.
*884 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, FL; and Randi Klayman Lazarus, Bar Counsel, Miami, FL, for Complainant.
G. Richard Strafer, Miami, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by respondent Alan Ira Karten, a member of The Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons that follow, we approve the referee's finding of guilt and recommendation of discipline.

FACTS
The Bar filed a complaint against Karten, alleging that he violated Rule Regulating the Florida Bar 4-8.4(c) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), by improperly selling his client's property and using the proceeds as an unauthorized fee. *885 The referee recommended disbarment, finding that Karten had violated rule 4-8.4(c).
On June 27, 1996, the United States District Court for the Southern District of Florida appointed Karten to represent Nelson Loynaz, Jr., under the Criminal Justice Act. Loynaz had been indicted for conspiring with twenty-one codefendants to distribute cocaine and was imprisoned during the subsequent criminal proceedings. In connection with the indictment, federal agents seized property including the six vehicles described below. On June 17, 1997, Karten negotiated a plea agreement for Loynaz in which Loynaz agreed to forfeit all property interest, if any, in the seized property. Loynaz was sentenced on August 18, 1997.
While the criminal proceedings were taking place, a civil forfeiture proceeding commenced concerning the seized property. On September 23, 1997, the government and Loynaz entered into a stipulation and settlement agreement (stipulation) that states in part:
1. On August 8, 1996, a Federal grand jury in this District returned a Second Superseding Indictment against Nelson Loynaz, Jr., (hereinafter "Defendant") and others. Pursuant to 21 U.S.C. § 853, the Indictment sought the forfeiture of the defendant's assets; a Bill of Particulars, filed October 11, 1996, more particularly described some of the defendant's assets, including the following vehicles:
a) One Mercedes Benz E320, VIN: WDBEA32E6SC217274; Florida Tag SJK-32Y;
b) One 1966 Chevrolet Corvette, VIN: 194376S109024;
c) One 1967 Chevrolet Corvette, VIN: 194377S118864;
d) One 1968 Ford Mustang, VIN: 8T02J16541502030; Florida Tag No. CUD-65Y;
e) One 1966 Ford Mustang GT350, VIN: 6S2282;
f) One 1994 Dodge Viper, VIN: 1B3BR65SE2RV102388.
2. The United States and Nelson Loynaz, Jr., [stipulate] that the vehicles described in a), b), c), d), and e) above shall be returned to the defendant without assessments for maintenance and storage; the vehicle in f) above and thirty thousand ($30,000.00) dollars, via cashier's check from Alan I. Karten, Esq., attorney for Nelson Loynaz, Jr., payable to "United States Marshals Service," shall be forfeited to the United States of America.
This document was signed by Loynaz, his wife, Karten, and an assistant United States attorney.
On November 14, 1997, Karten delivered a check for $30,000[1] to federal authorities and took possession of the vehicles described in subparagraphs b), c), d), and e) of the stipulation.[2] On November 17, 1997, Loynaz received a client retainer agreement that had been mailed by Karten regarding representation of Loynaz for the return of the vehicles. Loynaz, who was still imprisoned, refused to sign this retainer agreement. On December 9, 1997, Loynaz received four power of attorney documents in the mail from Karten. These power of attorney documents would have authorized Karten to obtain the titles to the four disputed vehicles. Loynaz again refused to sign the documents and attempted *886 to contact Karten regarding the vehicles.
On January 5, 1998, Karten sold the vehicles to his business associate, Robert Woltin, for $30,000. Woltin is the president and fifty-percent shareholder of a corporation named 201 East Atlantic Investments Corporation (East Atlantic). Karten was a twenty-five percent shareholder in East Atlantic. On March 9, 1998, Loynaz sent Karten a letter accusing Karten of misconduct and firing him as Loynaz's counsel. On March 13, 1998, Woltin sold one of the vehicles to Thomas Duncan for $25,000. After making an initial $1000 deposit to Woltin, Duncan paid the $24,000 balance with a check payable to Karten. The check was endorsed by Karten, and an unidentified individual wrote the words "[p]ay to the order of 201 East Atlantic, Inc." below Karten's signature. The $24,000 was entered into the East Atlantic's ledger as a capital contribution from Karten. Loynaz filed grievances with the Bar, and the Bar eventually filed the instant complaint.
At the disciplinary hearing, Loynaz, his wife, Woltin, Duncan, Bar auditor Carlos Ruga, Bar investigator James Crowley, and Carl Karmin[3] testified on behalf of the Bar. Attorney Robert Amsel, Karten, and Federal Bureau of Investigation agent Scott Wiegmann testified on behalf of Karten. The referee subsequently found Karten guilty of violating rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee explained this finding in his report:
9. Mr. Karten presented testimony and other evidence in an attempt to show that Mr. Loynaz was not the lawful owner of the aforementioned vehicles, or in the alternative, even if he was the lawful owner, counsel was lawfully hired by Mr. Loynaz to handle this matter as an administrative forfeiture not covered by the Criminal Justice Act. The former assertion is belied by credible testimony by Mr. Loynaz that he purposefully masked his ownership in the vehicles to avoid their seizure and forfeiture in the event of his arrest on drug charges. Second, the action by the United States on October 11, 1996, opposing defendant's motion for return of property placed this matter a part of the criminal case and not an administrative forfeiture. (Fla. Bar. Composite Exhibit No. 13). Further, Mr. Karten, a twenty-five year practicing criminal attorney, failed to secure or produce from Mr. Loynaz any existing written agreement that either authorized his representation outside of the Criminal Justice Act, or that permitted counsel to use the four vehicles as collateral toward attorney fees for representation during the forfeiture proceeding.
10. Mr. Karten's representation of Nelson Loynaz, from the date of his court appointment, as counsel under the Criminal Justice Act, was governed by Title 18, U.S.C. Section 3006A(f) which provides, in part, "except as so authorized or directed, no such person or organization (i.e. one appointed under the Act) may request or accept any payment or promise of payment for representing a defendant." The absence of both a written Client Retainer Agreement and Power of Attorney, would constitute evidence that Mr. Karten violated Title 18, U.S.C. Section 3006A(f) when, after entering into the September 23, 1997 Stipulation and Settlement Agreement, he sold the vehicles in question *887 after receiving compensation by the United States for his court appointed representation of Mr. Nelson Loynaz (Respondent Exhibit No. 8). Even assuming arguendo that he did not violate Section 3006A(f), the evidence demonstrates that Mr. Karten committed and/or perpetrated fraud upon Mr. Loynaz by selling the vehicles without proper authorization or consent from Mr. Loynaz.
11. Mr. Karten failed to properly compensate Mr. Loynaz for his financial interest and/or [loss] in the vehicles, less $30,000, the amount Mr. Loynaz was originally obligated to pay to satisfy the Stipulated Settlement Agreement. Moreover, Mr. Karten's use of a $30,000 loan from his wife as payment to satisfy the Stipulation and Settlement Agreement, coupled with the financial returns on his business arrangement with Mr. Woltin, further illustrates the extent of his irregular and deceitful conduct to exclude and take advantage of Mr. Loynaz during his confinement in a federal penitentiary outside the State of Florida. Thus, Mr. Karten has been unjustly enriched by his sale of the vehicles belonging to Mr. Loynaz and his receipt of attorney fees paid by the United States for his services as Mr. Loynaz' court appointed attorney. (See Respondent Exhibit No. 8 Composite).
Report of Referee at 4-5.
After conducting a separate mitigation and aggravation hearing, the referee recommended that Karten be disbarred from the practice of law. During the hearing, Karten called his former secretary, Elena Linder,[4] in an attempt to rebut Loynaz's testimony that he did not know Karten intended to sell the vehicles and that there was a lack of communication between Karten's law office and Loynaz. The referee refused to hear Linder's testimony as to that matter and stated that he was "not going to re-litigate the violation phase of this proceeding at this time." The referee did allow Karten's counsel to proffer that Linder would have testified that Loynaz knew of and consented to Karten's purchase of the vehicles, never complained that Karten stole the vehicles, and told Linder that he was firing Karten because Loynaz did not receive a sentence reduction. On cross-examination, the Bar pointed out several prior inconsistent statements made by Linder in her deposition.
Karten also called several character witnesses. The referee noted that several highly regarded witnesses testified as to Karten's reputation for truthfulness, but found:
[A]ny existing mitigating factor has been overwhelmingly outweighed by the following aggravating factors:
1. Mr. Karten's prior disciplinary offense; (Admonishment for minor misconduct)
2. Mr. Karten's dishonest or selfish motive;
3. Mr. Karten's refusal to acknowledge the wrongful nature of his conduct;
4. The vulnerability of Nelson Loynaz who while incarcerated in a federal penitentiary was taken advantage of by Mr. Karten;
5. Mr. Karten's substantial experience in the practice of law; and
6. Mr. Karten's indifference to making restitution to Mr. Loynaz.
Report of Referee at 6. The referee also recommended that all costs and expenses be charged to Karten. Subsequently, the referee summarily denied Karten's motion to supplement the record and for rehearing.
*888 Karten now petitions this Court to review the referee's report as to findings of fact, recommendations of guilt, recommendation of discipline, and assessment of costs.

ANALYSIS
Karten first challenges the referee's findings of fact and conclusion of guilt. We find that the referee's findings of fact and recommendation of guilt are supported by competent, substantial evidence. To succeed in challenging the referee's findings of fact, Karten must establish that there is a lack of evidence in the record to support such findings or that the record clearly contradicts the referee's conclusions. See Florida Bar v. Carricarte, 733 So.2d 975, 978 (Fla.1999). Karten has not met this burden.
Karten challenges the referee's reliance on the testimony of Loynaz, pointing out that Loynaz is a twelve-time convicted felon. Loynaz testified that he attempted to contact Karten on numerous occasions regarding the whereabouts of the vehicles. Loynaz stated that Karten sold the vehicles without his consent or knowledge. Loynaz further testified that his friend accompanied Loynaz's wife to Karten's office in an attempt to pay Karten the $30,000 that Karten had paid to the government on the basis of Loynaz's stipulation with the government. Karten, however, admitted that he refused to accept any money from Loynaz's friend and that he forced Loynaz's friend to leave the office. Loynaz's wife corroborated her husband's testimony. Thus, there was in actuality no conflict as to this evidence about which Karten attacks the credibility of Loynaz. But even if there was conflict, it would be for the referee to evaluate the credibility of the witnesses and resolve any conflicts of fact.
This Court has stated, "The referee is in a unique position to assess the credibility of witnesses, and [the referee's] judgment regarding credibility should not be overturned absent clear and convincing evidence that [the referee's] judgment is incorrect." Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991). The referee in the instant case assessed Karten's credibility and chose to credit the testimony of other witnesses over Karten's testimony. In his report, the referee spoke directly to the issue of Loynaz's credibility:
With regard to Mr. Loynaz' credibility, no discernible motive on his part to testify untruthfully has been established from the evidence, irrespective of his several felony convictions. On the contrary, Mr. Loynaz' testimony has been corroborated by the other evidence introduced at the hearing which conclusively and cumulatively shows that Mr. Karten violated R4-8.4(C)(A) [sic].
Report of Referee at 5. Thus, the referee specifically considered Loynaz's credibility and relied on the testimony of others to corroborate the statements of Loynaz.[5]
Karten's claim that the Bar now alleges violations that were not raised in the Bar's complaint is without merit. The Bar's complaint alleged that Karten received $55,000 in proceeds from the sale of the vehicles and that he failed to provide any of those proceeds to Loynaz. Although the complaint construes Karten's profit as an unauthorized fee, this language in the complaint gave Karten adequate notice that the Bar believed Karten *889 received an improper profit. The evidence presented at the disciplinary hearing constitutes competent and substantial evidence to support the referee's findings of fact and the referee's conclusion that Karten violated rule 4-8.4(c).
Karten next claims that the referee abused his discretion by refusing to reopen the violation hearing to allow Karten to present additional evidence. During the mitigation and aggravation hearing, Karten sought to introduce documents and witnesses in an attempt to further undermine Loynaz's credibility. The referee denied Karten's request. The referee also denied Karten's post-trial motion to supplement the record. While Karten's case was not technically closed because the referee had not issued the final report, the violation hearing was closed and both the Bar and Karten were well aware of this fact. The attorneys had concluded their closing arguments regarding guilt, and the referee had made a decision that Karten was guilty of violating rule 4-8.4(c). Karten also did not offer any explanation as to why the new evidence was not submitted during the violation hearing.
The referee's decision not to reopen the violation hearing is supported by the evidence in the record. The Bar's case against Karten was not solely premised on Loynaz's testimony. Several witnesses other than Loynaz contradicted Karten's explanation of the events. The evidence, including the stipulation, was not consistent with Karten's testimony. Karten also thoroughly attacked Loynaz's credibility during the violation hearing. The referee was in the best position to determine if the materials proffered would have had a meaningful impact on his decision regarding guilt. Thus, the record has no basis upon which this Court can conclude that the referee abused his discretion in not accepting this evidence at the time Karten belatedly wanted to pursue it.
Karten's final claim is that the referee's recommended discipline is too severe. The referee recommended that Karten be disbarred from the practice of law. Karten argues that this Court should not accept the recommended discipline because the referee relied on three invalid aggravating factors. The first aggravating factor challenged by Karten is the referee's reliance on Karten's prior disciplinary offense. We find that this is a valid aggravating factor. Although the admonishment that Karten received was given after the conduct in the instant case occurred, this Court has said that "cumulative misconduct can be found when the misconduct occurs near in time to the other offenses, regardless of when discipline is imposed." Florida Bar v. Golden, 566 So.2d 1286, 1287 (Fla.1990); see also Florida Bar v. Roberts, 770 So.2d 1207, 1209 (Fla.2000) (holding referee may consider prior disciplinary proceeding even though conduct subject to that proceeding occurred after the instant conduct).
Karten also challenges the "refusal to acknowledge the wrongful nature of his conduct" aggravator. In Florida Bar v. Corbin, 701 So.2d 334 (Fla.1997), this Court noted:
It was improper for the referee to consider in aggravation the fact that Corbin refused to acknowledge the wrongful nature of his conduct. Corbin's claim of innocence cannot be used against him. Florida Bar v. Lipman, 497 So.2d 1165, 1168 (Fla.1986) ("We agree ... that it is improper for a referee to base the severity of a recommended punishment on an attorney's refusal to admit alleged misconduct or `lack of remorse' presumed from such refusal.").
Corbin, 701 So.2d at 337 n. 2. Karten has steadfastly declared his innocence at all phases of this action, and his claim of innocence should not be used against him. *890 Therefore, the referee erred by considering Karten's "refusal to acknowledge the wrongful nature of his conduct" as an aggravating factor, and this aggravator is stricken.
The last aggravating factor challenged by Karten is the vulnerability of the client aggravator. Karten admits that the vulnerability of a victim can be a valid aggravating factor, see Florida Bar v. Benchimol, 681 So.2d 663, 666 (Fla.1996), but asserts that Loynaz was not actually vulnerable. A referee's finding that a particular aggravating factor exists is a factual determination that will not be overturned unless the finding lacks evidentiary support or is clearly erroneous. Florida Bar v. Wolis, 783 So.2d 1057, 1059 (Fla. 2001). During the time of Karten's misconduct, Loynaz was detained in a federal prison located outside of Florida. Thus, there is evidentiary support for the referee's finding of this aggravating factor.
Karten also claims that this Court should not accept the referee's recommended discipline because the referee did not give adequate consideration to Karten's mitigating evidence. This claim is without merit. See Florida Bar v. Morse, 784 So.2d 414, 415 n. 2 (Fla.2001) (noting that claim the referee did not sufficiently consider mitigating evidence was without merit when referee considered mitigation in report). The referee specifically considered Karten's mitigating evidence in the referee's report.
The referee recommended disbarment. Even with the striking of the "refusal to acknowledge the wrongful nature of his conduct" aggravator, we agree that disbarment is the appropriate sanction. The stipulation signed by Karten plainly states that the vehicles shall be returned to Loynaz, and the evidence indicates that the government intended for the vehicles to be returned to Loynaz. Karten obtained the vehicles for himself and failed to fulfill the terms of the stipulation. In doing so, Karten was unjustly enriched due to the contribution attributed to East Atlantic in his name.[6] This Court's case law supports disbarment. See, e.g., Florida Bar v. Fitzgerald, 541 So.2d 602, 606 (Fla.1989) (disbarment ordered where attorney misappropriated trust funds and betrayed interests of client); Florida Bar v. Kramer, 548 So.2d 233, 233 (disbarment ordered where attorney converted client's property for own use and then concealed the conversion).
Moreover, our analysis of what occurred in this case is that Karten blatantly engaged in self-dealing conduct for his own selfish benefit, to the detriment of his client. We emphasize that regardless of a client's circumstances and particularly when the client is vulnerable for any reason, including imprisonment, it is a lawyer's plain and straightforward ethical obligation to represent the client's interest, and not permit the lawyer's self-interest to be served, to the client's detriment. See Florida Bar v. Bailey, 803 So.2d 683, 694 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 1916, 152 L.Ed.2d 825 (2002). We make this express statement so that every *891 Florida lawyer will be aware of this Court's intent to steadfastly enforce this essential ethical obligation.
Accordingly, Alan Ira Karten is hereby disbarred from the practice of law in the State of Florida.[7] The disbarment will be effective thirty days from the filing of this opinion so that Karten can close out his practice and protect the interests of existing clients. If Karten notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Karten shall accept no new business from the date this opinion is filed. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Alan Ira Karten in the amount of $6,461.59, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, LEWIS and QUINCE, JJ., and HARDING, Senior Justice, concur.
NOTES
[1] Although the check was in Karten's name, the proceeds from that check in fact belonged to Karten's wife, representing money she loaned Karten.
[2] The Mercedes automobile described in subparagraph a) of the stipulation belonged to Loynaz's wife and was retrieved by her on December 2, 1997.
[3] Carl Kremin, who holds the other twenty-five percent of the East Atlantic's shares, testified through his deposition.
[4] Elena Linder is also identified in the record as Elena Garcia.
[5] While the record does not reveal evidence conflicting with Loynaz's testimony, there are numerous instances in the record where Karten's testimony appears inconsistent with other evidence. For example, Karten testified that he represented Loynaz's wife pro bono in helping her retrieve her vehicle. However, the vouchers that Karten submitted to the government for his fees under the Criminal Justice Act included the work spent retrieving Loynaz's wife's vehicle. The government refused to pay Karten for that work.
[6] Although not charged by the Bar and not considered by this Court in disbarring Karten, it is apparent that even if Karten's contentions were accepted in this case, his conduct potentially violated Rules Regulating the Florida Bar 4-1.8(a) (lawyer shall not enter into business transaction with client or knowingly acquire pecuniary interest adverse to client), 4-1.8(e) (lawyer shall not provide financial assistance to client in connection with pending litigation), and 4-1.8(i) (lawyer shall not acquire proprietary interest in subject matter of litigation lawyer is conducting for client). We emphasize that a lawyer representing an incarcerated client must be especially aware of these rules and take every precaution to avoid a conflict of interest or appearance of impropriety.
[7] Karten filed a "Motion to Relinquish Jurisdiction in Order to Pursue Newly Discovered Evidence" and a "Motion to Supplement Motion to Relinquish Jurisdiction in Order to Pursue Newly Discovered Evidence." These motions are denied.